THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MARION S. ELDERS, Defendant-Appellee.

Fifth District   No. 77-428

Opinion filed August 15, 1978.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

The State appeals from an order of the Circuit Court of Williamson County granting defendant Marion Elders' motion to suppress two firearms seized by county sheriff's deputies. The issue on appeal is whether the trial court's findings of fact and conclusions of law were manifestly erroneous.

The relevant facts may be briefly stated. On the evening of February 11, 1977, Maudine Elders, wife of the defendant, went to the Williamson County Sheriff's office where she spoke with Deputy Sheriff Dan McCluskey. She informed McCluskey that the defendant had arrived home that evening drunk, struck her repeatedly and threatened her with a rifle. She told McCluskey that she was afraid to return to her trailer and that she feared for the safety of her four-year-old son who had remained at the residence with the defendant. Pursuant to this complaint, McCluskey contacted Deputies Phil Richey and James Woolsey and instructed them to meet Mrs. Elders at a location near her residence in Marion, Williamson County.

When the deputies met Mrs. Elders, she repeated that her husband was armed and alone in the trailer with their infant son. Together they proceeded to the Elders' residence; upon arriving at that location, Mrs. Elders was instructed to remain a substantial distance behind the deputies and away from the trailer. By means of a public address system, the deputies requested the defendant to exit the trailer. When the defendant did not come out of the residence, the deputies radioed the sheriff's office and caused Deputy McCluskey to telephone him. The defendant insisted to McCluskey that he would not leave the trailer unless the officers came to his door. After several minutes and repeated requests over the public address system, the defendant, unarmed, exited the trailer onto the front porch where he was immediately arrested and handcuffed. Deputy Richey then entered the trailer and found the child on the living room sofa unharmed. As he was turning to leave, Richey saw a .22-caliber rifle leaning against the front door frame. Richey then summoned Mrs. Elders and seized the rifle, unloading it.

Deputy Richey asked Mrs. Elders if her husband had any other weapons, and she replied that there might be one in his car parked near the trailer. Richey asked her permission to search the car, and she replied, "Go ahead." Thereafter, the officers searched the auto where they discovered a pistol under some rags in a box.

Deputies Richey and Woolsey both testified that the purpose of the entry into the trailer was to check on the condition of the child. Richey

stated that Mrs. Elders had specifically asked the officers to ascertain whether her son was safe.

Following the hearing, the trial court granted the defendant's motion to suppress both guns. In its findings of fact, the court concluded that the deputies had no right to enter the trailer without a search warrant. With respect to the pistol, the court found that the officers had no right to inquire about other weapons because they had no probable cause to believe that other weapons were used in the commission of a criminal offense. The court also found that there had been no consent to search the automobile.

The State contends on appeal, as in the trial court, that the seizure of the rifle in the defendant's trailer was justifiable under the "plain view" doctrine. Under this doctrine, a warrantless seizure of an item is proper when three conditions are met: (1) the object seized is in plain view, (2) the officer views the object from a position where he has a right to be, and (3) the facts and circumstances known to the officer at the time he acts give rise to a reasonable belief that the object seized constitutes evidence of criminal activity (*People v. Holt*, 18 Ill. App. 3d 10, 309 N.E.2d 376 (1st Dist. 1974)). The State's argument on this issue is directed to the second requirement which it urges was met, the trial court having found that the deputies had no right to enter the trailer without a search warrant.

■■ It is the State's position that Deputy Richey was justified in entering the trailer because he reasonably believed that an emergency existed which required immediate action. The emergency alleged was the safety of the defendant's child; Mrs. Elders had repeated to three different officers that she feared for the safety of her child. The State's argument is well taken. Generally, an entry into a residential dwelling for the purpose of rendering assistance to those in possible peril is justified and the subsequent seizure of articles in plain view is not a violation of an occupant's rights. (*People v. Lovitz*, 39 Ill. App. 3d 624, 629-30, 350 N.E.2d 276, 280 (2d Dist. 1976) *cert. denied*, ___ U.S. ___, 54 L. Ed. 2d 107, 98 S. Ct. 141 (1977); *People v. Clayton*, 34 Ill. App. 3d 376, 339 N.E.2d 783 (1st Dist. 1975); *People v. Brooks*, 7 Ill. App. 3d 767, 289 N.E.2d 207 (1st Dist. 1972).) In this regard, the question of whether the officer reasonably believed an emergency existed is one of fact to be determined by the trial court.

While we are of the opinion that the testimony given in the instant cause supports the State's assertion that Deputy Richey rightfully believed that an immediate investigation of the trailer was necessary, we cannot conclusively determine whether the question was actually considered by the trial court. We need not resolve this issue, however, because the defendant in his brief concedes that the officer was justified, for emergency reasons, in entering the trailer. Although admitting that there was no illegal entry by Deputy Richey, the defendant contends that the

rifle was properly suppressed because the other two conditions of the plain view doctrine were not met.

■■ Deputy Richey testified that he entered the defendant's trailer through a front door which opened inward to the living room. According to Richey, the door was hinged on the left and was already partially open at the time of entry. Richey proceeded to the right side of the living room to check on the condition of the child who at the time was lying on a sofa. Satisfied that the child was unharmed, Richey returned to the doorway to exit the trailer thereupon noticing a rifle behind the door leaning against the doorjamb. Richey stated that the rifle was clearly visible to him as he approached the partially opened door from the side opposite its hinges. Defendant questions how Deputy Richey could have seen the rifle from his vantage point and argues that inasmuch as the rifle was situated on the butt hinge side of the door it was necessarily hidden from Richey's viewpoint. We disagree. It is entirely possible that part of the rifle, either its barrel or butt end, was protruding from behind the door and therefore clearly visible to him. In addition, the evidence indicated that the door was partially rather than completely opened, thus broadening Richey's range of observation in the living room. In any event, we find nothing in the evidence to support defendant's assertion that the rifle was hidden or that the concept of plain view was transgressed; rather, we believe that the State sufficiently satisfied its burden of proving that the discovery was inadvertent. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *People v. Eastin*, 8 Ill. App. 3d 512, 289 N.E.2d 673 (5th Dist. 1972).

■■ In support of his claim that the rifle was properly suppressed, defendant argues that even assuming that Deputy Richey had a clear view of the rifle as he approached the front door, the State nevertheless failed to prove that the facts and circumstances known to him as he acted prompted him to reasonably believe that the rifle seized was evidence of criminal activity. We find this assertion totally without merit. In light of the fact that the officers were at the scene because of a report that the defendant had brandished a rifle at his wife, it was quite reasonable for them to seize a rifle located in the same room from which the defendant had previously refused to exit. Accordingly, the requirements for plain view seizures, as set forth in *People v. Holt*, were met in the instant cause; we conclude, therefore, that the portion of the trial court's order which suppressed the rifle was error and is reversed.

The State also contends that the trial court improperly suppressed the pistol found in the defendant's automobile. The State seeks to justify the seizure of the pistol on two grounds: (1) Maudine Elders, as the defendant's wife, was able and did give effective consent to the search of the automobile, and (2) the deputies were searching the automobile with probable cause to believe that a crime had been committed.

The question of whether consent to a warrantless search has been given is a factual matter to be determined in the first instance by the trial court, and where the evidence on the issue is in conflict, this court will accept the findings of the trial court unless they are clearly unreasonable. (*People v. Haskell*, 41 Ill. 2d 25, 241 N.E.2d 430 (1968); *People v. Taylor*, 31 Ill. App. 3d 576, 333 N.E.2d 41 (4th Dist. 1975).) Our examination of the trial court's findings on this issue in the instant cause leads us to conclude that the court's finding that there was no consent to search the automobile was a holding that Mrs. Elders could not have given consent, rather than a finding that regardless of her ability to do so she did not manifest such an intention to the deputies. The court remarked in its findings that there had been no showing that Mrs. Elders had any ownership interest in the auto, or any right whatsoever to consent to its search. The State urges this interpretation of the court's holding and contends that the fact Mrs. Elders was married to and resided with the defendant gave her authority to consent to a search of the auto without any showing or declaration that she had any actual ownership interest in the vehicle.

■■ ■ The requisite proof of voluntary consent to justify a warrantless search is not limited to proof that the consent was given by the defendant; rather, it is sufficient to show that permission was obtained from a third party who possessed common authority over, or other sufficient relationship to, the premises or effects sought to be inspected (*United States v. Matlock*, 415 U.S. 164, 171, 39 L. Ed. 2d 242, 249-50, 94 S. Ct. 988, 993 (1974); *People v. Stacey*, 58 Ill. 2d 83, 317 N.E.2d 24 (1974); *People v. Johnson*, 23 Ill. App. 3d 886, 321 N.E.2d 38 (1st Dist. 1974).) In *Matlock*, the high court explained that the authority which justifies third party consent does not rest upon the law of property but rather is based on the "mutual use of the property by persons generally having joint access or control for most purposes * * *." (415 U.S. 164, 171 n.7, 39 L. Ed. 2d 242, 250 n.7, 94 S. Ct. 988, 993 n.7.) The State argues that the normal incidents of the marital relationship vest sufficient possessory interests in each spouse in the property of the other such that a warrantless search and seizure consented to by one spouse is operative against the other. We disagree. It is only where the record affirmatively establishes "joint occupancy" or "equal rights to possession" that one spouse's consent to a search is binding against the other. (See *People v. Stacey*; *People v. Haskell*, 41 Ill. 2d 25, 241 N.E.2d 430 (1968).) The instant record fails to establish that Mrs. Elders possessed joint control or a right to access to the automobile which she consented to be searched. Contrary to the State's assertion, we do not interpret the authorities cited to create a presumption that the mere existence of a marital relationship standing alone vests in each spouse the requisite "common authority" announced in *Matlock* necessary to validate one spouse's consent to a warrantless search against the other nonconsenting spouse with whom the authority is shared. We

conclude, therefore, that the trial court's finding that there was no consent to search the automobile was supported by the evidence and is correct.

In the alternative, the State argues that because the deputies found no firearm owner's identification card in the defendant's possession at the time of his arrest, they had probable cause to believe his keeping of a pistol in his car constituted a violation of section 2 of "An Act relating to * * * firearms * * *" (Ill. Rev. Stat. 1975, ch. 38, par. 83—2). On this basis, the State contends that the deputies were justified in conducting a warrantless search even without Mrs. Elders' consent.

■■ The offense of failure to possess a State firearm owner's identification card is committed when a defendant possesses a firearm without having in his possession a firearm owner's identification card. (*People v. Brownlee*, 17 Ill. App. 3d 535, 308 N.E.2d 377 (1st Dist. 1974).) The mere ownership of a card by a person arrested in possession of a firearm is not sufficient under section 83—2; he must then also have the card on his person. (*People v. Cahill*, 37 Ill. App. 3d 361, 345 N.E.2d 528 (2d Dist. 1976).) However, there is no requirement that a person must carry the card at all times, even when he is not in possession of his registered weapon. While we are aware that criminal possession can be either actual or constructive, and that constructive possession may be established by the actual possession of the locus in or on which the pistol is found (*People v. White*, 33 Ill. App. 3d 523, 338 N.E.2d 81 (1st Dist. 1975)), there was no showing in the instant cause that the defendant actually owned the automobile, had recently driven it, possessed the keys to the vehicle at the time of his arrest or was in close proximity to the vehicle at the time of his arrest such that it could be said that he was in actual possession of the automobile wherein the weapon was found, and thus also in possession of the pistol. See *People v. Billings*, 52 Ill. App. 3d 414, 422-23, 367 N.E.2d 337, 344 (1st Dist. 1977).

Thus, the fact that the defendant herein did not have on his person at the time of his arrest a firearm owner's identification card was not conclusive evidence that he did not possess one or that this offense was committed, and the trial court was not required to find that the lack of this card on the defendant's person constituted probable cause that the offense had been committed. Accordingly, we find no error in that portion of the trial court's order suppressing the pistol seized from the automobile.

For the reasons stated, that portion of the order of the Circuit Court of Williamson County suppressing the rifle is reversed and the cause remanded, and that portion of the order suppressing the pistol is affirmed.

Reversed in part; affirmed in part.

EBERSPACHER, P. J., and HICKMAN, J., concur.