# Illinois Official Reports

## Supreme Court

*People v. Brown*, 2020 IL 124100

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VIVIAN CLAUDINE BROWN, Appellee. |
| Docket No. | 124100 |
| Filed | April 2, 2020 |
| Decision Under Review | Appeal from the Circuit Court of White County, the Hon. Mark R. Stanley, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Garson S. Fischer, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | David G. Sigale, of Law Firm of David G. Sigale, P.C., of Glen Ellyn, for appellee. |
| | Jonathan K. Baum and Anne Raven, of Katten Muchin Rosenman LLP, of Chicago, for *amicus curiae* Giffords Law Center to Prevent Gun Violence. |

Gregory A. Bedell, of Knabe, Kroning & Bedell, of Chicago, George A. Mocsary, of Carbondale, and Joseph G.S. Greenlee and David B. Kopel, both of Denver, Colorado, for *amici curiae* State's Attorneys Stewart J. Umholtz and Brandon J. Zanotti *et al.*

Justices    CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, and Neville concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion, joined by Justice Theis.

Justice Michael J. Burke took no part in the decision.

**OPINION**

¶ 1    Defendant, Vivian Brown, was charged by information with possessing a firearm without a Firearm Owners Identification (FOID) card in violation of section 2(a)(1) of the Illinois Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/2(a)(1) (West 2016)). The circuit court of White County dismissed the charge, finding that, as applied to the facts of this case, section 2(a)(1) was unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 22). Direct appeal was taken to this court. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013). For the reasons that follow, we determine that the circuit court unnecessarily reached defendant's constitutional challenge. We therefore remand this cause with directions.

¶ 2                                    BACKGROUND

¶ 3    On May 5, 2017, a criminal information was filed in the circuit court of White County charging defendant with knowingly possessing a firearm "without having in her possession a Firearm Owner's identification card," in violation of section 2(a)(1) of the FOID Card Act. This provision states:

"No person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act." 430 ILCS 65/2(a)(1) (West 2016).

¶ 4    To acquire a FOID card, an applicant must submit a form to the Illinois State Police attesting that he or she is not subject to certain disqualifying conditions, such as being under the age of 21, a felon, or a person who has been adjudicated with a mental disability. *Id.* § 4(a)(2). The applicant must also submit a personal photograph (*id.* § 4(a-20)), pay $10 (*id.* § 5), and sign a release allowing the State Police to perform a background check to verify the information contained in the application (*id.* § 4(a)(3)). An initial violation of section 2(a)(1) is a Class A misdemeanor when the person does not currently possess a valid FOID card but is otherwise eligible for one. *Id.* § 14(b).

- 2 -

¶ 5       On September 26, 2017, defendant filed a "Motion to Find Statute Unconstitutional," in which she alleged the following facts regarding the incident that led to her arrest and prosecution. At approximately 1:47 p.m., on March 18, 2017, defendant's estranged husband phoned the White County Sheriff's Department and reported that defendant was shooting a gun inside her rural home near Carmi, Illinois. Officers from the sheriff's department went to defendant's home to investigate and, while there, discovered a Remington-brand, .22-caliber, single-shot, bolt-action rifle in defendant's bedroom. However, the officers found no evidence that this rifle, or any other gun, had been fired in the home. Defendant denied firing the rifle, and other occupants of the residence denied hearing any shots being fired.

¶ 6       According to defendant's motion, after the sheriff's officers completed their investigation, they prepared an incident report and forwarded it to the White County State's Attorney's office. Thereafter, the State's Attorney filed a criminal information against defendant, charging her with violating section 2(a)(1) of the FOID Card Act (*id.* § 2(a)(1)). A warrant was issued, and defendant was arrested on May 20, 2017.

¶ 7       Defendant did not indicate in her motion who owned the rifle that was found in her home or when or how it was acquired. She did acknowledge, however, that she was in possession of the rifle when the sheriff's officers observed it. She also asserted that she kept the rifle in her home for self-defense; that she was over 21; and that, although she did not possess a FOID card, she was a law-abiding citizen with no criminal record, history of mental illness, or other disqualifying condition and, thus, would have been eligible to obtain a FOID card had she applied for one.

¶ 8       Based on the foregoing alleged facts, defendant argued in her motion that section 2(a)(1) of the FOID Card Act was unconstitutional as applied to her. Citing *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), defendant noted the second amendment to the United States Constitution protects an individual's right to keep and bear arms for the purpose of self-defense and that this right is at its "most acute" in the home. Defendant maintained she was a law-abiding person charged with possessing an otherwise lawful firearm without a FOID card solely within the confines of her home and that requiring her to go through the FOID card process unconstitutionally infringed upon her fundamental right of self-defense in this "most private of areas."

¶ 9       A hearing was held on defendant's motion the same day it was filed, and the matter was then taken under advisement by the circuit court.[1] On February 14, 2018, the court entered a written order granting defendant's motion and finding section 2(a)(1) unconstitutional "as applied to the defendant," under both the Illinois and United States Constitutions. Stating that the facts of the case were "undisputed," the circuit court held that requiring defendant to "fill out a form, provide a picture ID and pay a $10 fee to obtain a FOID card before she can exercise her constitutional right to self-defense with a firearm" in her home violated the second amendment to the United States Constitution as applied to the states through the fourteenth amendment (U.S. Const., amends. II, XIV), as well as article I, section 22, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 22). The court further stated that its finding of unconstitutionality had been entered in conformity with Illinois Supreme Court Rule 18 (eff.

---

[1]Although the circuit court record sheet indicates that a hearing was held on defendant's motion, there is no transcript from this hearing in the record on appeal. There also is no written response to defendant's motion from the State contained in the record.

Sept. 1, 2006). The court's order did not contain language dismissing the information against defendant.

¶ 10    On March 19, 2018, the State filed a motion to "Reconsider and Amend" the circuit court's order declaring section 2(a)(1) unconstitutional.[2] In this motion, the State maintained that, even within the confines of the home, the FOID card requirement is a reasonable regulation on the right to keep and bear arms and, therefore, is permitted under the second amendment. Alternatively, the State argued that, if the circuit court declined to reconsider its decision, its order should nevertheless be amended to comply fully with Rule 18. In particular, the State asserted the court's order should set forth the factual findings the court believed rendered the statute unconstitutional. This point was then repeated during the hearing held on the motion to reconsider. There, the State conceded "the gun was undisputedly in the home in this case" but maintained there was "not a sufficient factual record" to determine other matters such as whether defendant "fit into the class of citizens who are otherwise eligible to receive a FOID card." The State argued the circuit court should "clarify what factual findings specific to this case" rendered the statute unconstitutional.

¶ 11    On October 2, 2018, the circuit court made a docket entry in which it denied the State's motion to reconsider and, in addition, supplemented the court's prior order of February 14, 2018. The docket entry also instructed counsel for the defendant to prepare a written order that conformed with the entry. That order, which was filed on October 16, 2018, added two new points addressing the difficulties of implementing the FOID card requirement in the home. First, the circuit court noted that possession of a firearm under the FOID Card Act may consist of either actual, physical possession or constructive possession. The court observed that constructive possession of a firearm may be shown where the person has knowledge of the presence of the weapon and exercises immediate and exclusive control over the area where the firearm is found (see, *e.g.*, *People v. McIntyre*, 2011 IL App (2d) 100889) and, thus, a person may often be in possession of a firearm in one's home even if that firearm is not physically on the person.

¶ 12    Citing *People v. Eldens*, 63 Ill. App. 3d 554 (1978), and *People v. Cahill*, 37 Ill. App. 3d 361 (1976), the circuit court stated that, while possession of a firearm may be constructive, possession of the FOID card itself must be actual and "a person must have a FOID card on their person" whenever in possession of a firearm in order to comply with section 2(a)(1). See *Eldens*, 63 Ill. App. 3d at 559 (the possessor of the firearm must "have the card on his person"). From this, the court reasoned "that compliance [with section 2(a)(1)] is impossible when one is in their own home. No person could have their FOID card on their person 24 hours each and every day when firearms or ammunition are in the house."

¶ 13    Second, the circuit court noted that the concept of constructive possession can create problems for those people who share a home with a firearm owner but who do not themselves possess a FOID card. If one person in lawful possession of a firearm in the home leaves the firearm unsecured, other residents might have constructive possession of that firearm (see, *e.g.*, *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) (more than one party can have joint constructive possession)). In this situation, according to the circuit court, "every person in the home (family

---

[2]This motion was filed on behalf of the State by the Attorney General of the State of Illinois. The Attorney General's office litigated this case both in the circuit court and on appeal from this point forward.

- 4 -

member, friend, spouse, etc.) who has knowledge of the firearms or ammunition and has immediate and exclusive control of the area where the firearms or ammunition is located, who does not have a FOID card, would be in violation of the statute." In other words, according to the circuit court, the lawful owner of a firearm could inadvertently make criminals out of the other residents simply by leaving the firearm unsecured in the home.

¶ 14　　The circuit court concluded that these concerns, in addition to the concerns discussed in its original order, warranted finding section 2(a)(1) unconstitutional as applied. Importantly, however, the circuit court then found, "As an alternative, if [section 2(a)(1)] is constitutional then it becomes obvious the legislature did not intend the statute to apply in one's own home due to impossibility of compliance." Finally, at the conclusion of its order denying the State's motion to reconsider, the circuit court stated that, for "the above and foregoing reasons," defendant's cause was dismissed with prejudice.

¶ 15　　The State sought direct appeal in this court from the judgment of the circuit court finding section 2(a)(1) unconstitutional and dismissing defendant's case. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013). We allowed the Giffords Law Center to Prevent Gun Violence to file an *amicus* brief on behalf of the State's position. We also allowed State's Attorneys Stewart J. Umholtz and Brandon J. Zanotti, six professors of second amendment law, the Firearms Policy Coalition, the Citizens Committee for the Right to Keep and Bear Arms, the Millennial Policy Center, the Independence Institute, and economics professor Carlisle Moody to file jointly an *amicus curiae* brief on behalf of defendant's position.

¶ 16　　　　　　　　　　　　　　　　ANALYSIS

¶ 17　　At the outset we consider our subject-matter jurisdiction to address this appeal. Although neither party has challenged our jurisdiction, we have a duty to consider the issue *sua sponte*, since subject-matter jurisdiction cannot be waived and cannot be conferred on this court by consent of the parties. *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 8 (citing *In re M.W.*, 232 Ill. 2d 408, 417 (2009)); *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984).

¶ 18　　The State seeks direct appeal in this court under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). Rule 603 provides that "[a]ppeals in criminal cases in which a statute of the United States or of this State has been held invalid shall lie directly to the Supreme Court as a matter of right." *Id.* Similar language is also found in Illinois Supreme Court Rule 302(a)(1) (eff. Oct. 4, 2011), pertaining to civil appeals, and case law interpreting Rule 302(a)(1) is also relevant in criminal cases. *People v. Fuller*, 187 Ill. 2d 1, 8 (1999); see also Ill. S. Ct. R. 603, Committee Comments (rev. July 1, 1971) (noting that the direct appeal provision in Rule 603 is "[t]he same provision" that appears in Rule 302).

¶ 19　　The circuit court in this case held a statute "invalid" when it found section 2(a)(1) unconstitutional as applied to defendant. See *Fuller*, 187 Ill. 2d at 9-10. However, at the same time the circuit court held section 2(a)(1) unconstitutional, it also provided an alternative, nonconstitutional ground for dismissing defendant's information, when it held that the legislature did not intend for the FOID Card Act to apply in the home. This fact is significant because, under *Trent v. Winningham*, 172 Ill. 2d 420 (1996), and *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443 (1999), when the circuit court provides an alternative, nonconstitutional basis for relief, direct appeal cannot lie in this court.

¶ 20    In *Trent*, a mother sought retroactive child support from the father of her child under section 14(b) of the Illinois Parentage Act of 1984 (750 ILCS 45/14(b) (West 1992)). *Trent*, 172 Ill. 2d at 422. The circuit court denied the claim for support on the grounds that (1) the claim was time-barred, (2) the claim failed on the merits based on the factors listed for consideration under the statute, and (3) the statute was unconstitutional under federal and state equal protection guarantees. *Id.* The State, which had intervened to defend the constitutionality of section 14(b), sought direct appeal to this court under Rule 302(a)(1). *Id.* at 423.

¶ 21    After briefing and oral argument, this court held that the circuit court's finding of unconstitutionality could not serve as a basis for direct review. In support of this conclusion, *Trent* cited the long-standing, common-law doctrine that holds that courts should not compromise the stability of our legal system "by declaring legislation unconstitutional when the particular case does not require it." *Id.* at 425 (citing *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460, 464 (1994)); see also, *e.g.*, *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994) (questions regarding the constitutionality of statutes should be considered "only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds"). *Trent* observed that the circuit court had violated this doctrine when it held section 14(b) unconstitutional and, at the same time, granted relief to the plaintiff on alternative, nonconstitutional grounds. *Trent*, 172 Ill. 2d at 426. That violation had, in turn, upset the normal appellate process and brought a case to this court as a matter of right that might otherwise have been declined as a matter of permissive review. *Id.* In other words, the case was before this court as a matter of right only because the circuit court had taken an action that it should not have.

¶ 22    *Trent* acknowledged there might be reasons of efficiency or judicial economy to address the constitutional issue. However, the court determined that these interests could not justify holding a statute unconstitutional before it was necessary to do so. *Id.* at 425. Invoking the power under Illinois Supreme Court Rule 366(a) (eff. Feb. 1, 1994) to grant any relief that the case might require, *Trent* vacated the circuit court's judgment order and directed the circuit court to enter a new, modified order that excluded the finding of unconstitutionality. *Trent*, 172 Ill. 2d at 427. This was necessary, the court explained, in order to preserve the mother's right to seek review in the appellate court of the circuit court's nonconstitutional basis for its ruling and to "permit the normal appellate process to run its course." *Id.* at 426.

¶ 23    *Trent* thus holds that, when a circuit court finds a statute unconstitutional and, at the same time, also grants relief on an alternative, nonconstitutional ground, Rule 302(a)(1) does not vest this court with jurisdiction to address the constitutional claim (*id.* at 427). Instead, this court will vacate the circuit court's judgment order and remand the cause to the circuit court with directions to enter a new, modified judgment order that excludes the finding of unconstitutionality.

¶ 24    *Trent* was reaffirmed three years later in *Hearne*. As in *Trent*, the circuit court in *Hearne* held a statute unconstitutional and, at the same time, granted relief to the plaintiff on an alternative, nonconstitutional ground. *Hearne*, 185 Ill. 2d at 449-52. *Hearne* repeated *Trent*'s holding that, in these circumstances, a circuit court's finding that a statute is unconstitutional is unnecessary and thus cannot "properly serve as a basis for direct supreme court review under Rule 302(a)." *Id.* at 455. Consistent with *Trent*, *Hearne* vacated the circuit court's judgment

order and remanded with directions to enter a new, modified order that excluded the finding of unconstitutionality. *Id.* at 456-57.

¶ 25 *Trent* and *Hearne* were both direct appeals under Rule 302(a)(1). Notably, however, the principles underlying those cases have also been applied in appeals brought from our appellate court. In *People v. Hampton*, 225 Ill. 2d 238, 240 (2007), the appellate court vacated the defendant's convictions and remanded the cause to the circuit court for further proceedings. Having done so, the appellate court then went on to hold a sentencing statute unconstitutional under the proportionate penalties clause of the Illinois Constitution. *Id.* Because the appellate court had held a statute unconstitutional, the State sought appeal to this court as a matter of right under Illinois Supreme Court Rule 317 (eff. Oct. 15, 1979). *Hampton*, 225 Ill. 2d at 243. Like Rules 302(a)(1) and 603, Rule 317 provides that appeals from the appellate court shall lie to this court as a matter of right in cases in which a statute of the United States or of this state has been held invalid. Ill. S. Ct. R. 317 (eff. July 1, 2017).

¶ 26 As in *Trent* and *Hearne*, this court in *Hampton* stressed that statutes should be found unconstitutional only when necessary and that, in that instance, after vacating defendant's convictions and remanding the cause to the circuit court, it was unnecessary for the appellate court to find the sentencing statute unconstitutional. *Hampton*, 225 Ill. 2d at 243-44. Citing *Hearne*, *Hampton* also again rejected the idea that interests of efficiency or judicial economy could justify reaching the constitutional claim. The court stated:

"We note that the State asserted in oral argument that the appellate court correctly reached the proportionate penalties issue because it was more efficient to address it in this appeal. The interest in efficiency or judicial economy, however, does not justify reaching a constitutional issue unnecessarily. *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443, 456 (1999). Unnecessarily addressing a constitutional issue is improper because it may result in compromising the stability of the legal system in the event that the statute is declared unconstitutional when the particular case does not require that action. See *In re E.H.*, 224 Ill. 2d at 179, quoting *People v. Lee*, 214 Ill. 2d 476, 482 (2005). The interest in the stability of the legal system outweighs the potential benefit of increased efficiency that may be gained by addressing a constitutional issue before it is necessary to reach it." *Id.* at 244-45.

Accordingly, *Hampton* vacated the appellate court's finding of unconstitutionality and remanded the cause to the circuit court. *Id.* at 246; see also, *e.g.*, *In re E.H.*, 224 Ill. 2d 172, 181 (2006) (vacating the appellate court's premature finding that a statute was unconstitutional and remanding the cause to that court with directions to first consider nonconstitutional issues).

¶ 27 The common-law doctrine that holds that courts should not compromise the stability of the legal system by declaring legislation unconstitutional when it is not required is " '[o]ne of the most firmly established' " in constitutional law (*Lorton v. Brown County Community Unit School District No. 1*, 35 Ill. 2d 362, 364 (1966) (quoting *Grasse v. Dealer's Transportation Co.*, 412 Ill. 179, 201 (1952))) and one that this court has applied with diligence. See, *e.g.*, *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 176-77 (2007) (noting that a just respect for the legislature requires that statutes not be found unconstitutional unless necessary). Indeed, the doctrine is of such importance that this court has taken the "somewhat extraordinary step" of incorporating it into our Supreme Court Rules to ensure its enforcement. *In re E.H.*, 224 Ill. 2d at 178. Illinois Supreme Court Rule 18(c)(4) (eff. Sept. 1, 2006) requires

courts to state in writing that a case cannot be resolved on an alternative ground before finding a statute unconstitutional. We have also incorporated *Trent* and *Hearne*'s holdings that an order of the circuit court that unnecessarily finds a statute unconstitutional may be vacated by this court at any time, whether before or after briefing and oral argument, in Illinois Supreme Court Rule 302(c)(2) (eff. Oct. 4, 2011).

¶ 28　　In this case, at the conclusion of its October 16, 2018, order denying the Attorney General's motion to reconsider and dismissing defendant's information, the circuit court stated it had complied with Rule 18 and that its finding of unconstitutionality was necessary and the decision could not rest upon an alternative ground. However, in the immediately preceding paragraphs the circuit court had provided one.

¶ 29　　At the outset of its October 16, 2018, order the circuit court stated it was denying the State's motion to reconsider and supplementing its prior order from February 14, 2018. The court then set forth two factual situations involving the use of a FOID card that, in the court's view, demonstrated the difficulties of applying the FOID Card Act in the home: (1) it was impossible for a person to have a FOID card on his or her person at all times while in constructive possession of a firearm in the home and (2) the lawful holder of a FOID card could inadvertently make criminals out of other residents of the home who lacked a FOID card by simply leaving a firearm unsecured. Notably, neither of these factual situations had any relevance to defendant's as-applied constitutional challenge. A claim that a statute is unconstitutional as applied requires a showing that the statute violates the constitution as it applies to the specific "facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. Yet, as was pointed out by several members of this court at oral argument in this case, the factual situations set forth by the circuit court could have nothing to do with the specific facts and circumstances of defendant's case because she never possessed a FOID card to begin with. Thus, when viewed in the context of defendant's as-applied second amendment challenge, it is difficult to see what purpose the circuit court had for including the supplemental material in its October 16, 2018, order.

¶ 30　　However, that material makes perfect sense when understood as statutory analysis. When interpreting a statute, a court may always consider the consequences of construing the law one way or another and may always consider whether a particular interpretation of the statute will lead to absurd, inconvenient, or unjust results. *People v. Gutman*, 2011 IL 110338, ¶ 12. The circuit court's October 16, 2018, order consisted primarily of a statutory analysis in which the court concluded the legislature did not intend for the FOID Card Act to apply in the home because such an interpretation would lead to absurd and unworkable results. See, *e.g.*, *People v. Hanna*, 207 Ill. 2d 486, 498 (2003).

¶ 31　　Further, if there were any doubt this was the circuit court's intent, the court resolved it later in the order. The court stated,

> "As an alternative, if [section 2(a)(1)] is constitutional then it becomes obvious the legislature did not intend the statute to apply in one's own home due to impossibility of compliance."

The circuit court's language was clear and unequivocal. The court held that the FOID Card Act did not apply to the act of possessing a firearm in the home as a matter of statutory

interpretation and, therefore, could not apply to defendant. This was an alternative, nonconstitutional basis for dismissing defendant's information.[3]

¶ 32    The circuit court's holding that section 2(a)(1) of the FOID Card Act is unconstitutional was not necessary for the resolution of this case. Thus, in accordance with *Trent* and *Hearne*, the circuit court's constitutional holding cannot "properly serve as a basis for direct supreme court review." *Hearne*, 185 Ill. 2d at 455. We must therefore vacate the court's finding of unconstitutionality and remand the cause to the circuit court to enter a modified judgment order that excludes that finding. In so holding, we emphasize that we express no opinion on the merits of the circuit court's statutory analysis. The entry of a modified judgment order is done only to preserve the State's right to seek review in the appellate court of the circuit court's nonconstitutional basis for dismissing defendant's information (Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017)) and to "permit the normal appellate process to run its course" (*Trent*, 172 Ill. 2d at 426).

¶ 33    An additional point merits comment. This court has repeatedly held that,

> "because as-applied constitutional challenges are necessarily dependent on the specific facts and circumstances of the case, a court is not capable of making an as-applied determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. Absent a sufficient evidentiary record, any finding that a statute is unconstitutional as applied is premature." *Vasquez Gonzalez*, 2018 IL 123025, ¶ 24.

See also *People v. Harris*, 2018 IL 121932, ¶ 39; *People v. Minnis*, 2016 IL 119563, ¶ 19; *People v. Rizzo*, 2016 IL 118599, ¶ 26; *People v. Mosley*, 2015 IL 115872, ¶¶ 47-48; *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004). Here, although the circuit court found section 2(a)(1) unconstitutional as applied, it did not conduct an evidentiary hearing or make findings of fact. Nor is there anything of record to indicate the State stipulated to any matter in the circuit court other than the fact defendant possessed some type of firearm in her home. To be sure, in its initial order of February 14, 2018, holding section 2(a)(1) unconstitutional, the circuit court found that the State did not dispute any of the facts alleged by defendant in her motion to find the statute unconstitutional. Yet the State, in both its written motion to reconsider and the hearing on that motion, expressly informed the court that it did dispute the facts alleged by defendant and that the factual record was not sufficient to determine whether defendant was a law-abiding person who fit within the class of individuals eligible to receive a FOID card. Thus, when the circuit court entered its final judgment order on October 16, 2018, and repeated the finding that section 2(a)(1) was unconstitutional as applied, essential factual matters remained unresolved.

¶ 34    Before this court, the State has continued to recognize the problem. At oral argument the State acknowledged that

---

[3]The circuit court's alternative holding first appeared in the court's docket entry from October 2, 2018. Of note, this docket entry did *not* contain any mention of Rule 18(c)(4), nor did it say anything about whether it was or was not possible for the court's judgment to rest upon an alternative, nonconstitutional ground. That language only appeared later, in the final written order that was prepared by defense counsel and filed on October 16, 2018. This fact further underscores the point that the circuit court intended to provide an alternative basis for its judgment. Rule 18(c)(4) concerns were simply not under consideration by the court when the alternative holding was made for the first time.

"[t]he posture of this case is such that we don't have a lot of definitive factual answers about the circumstances. So we have to take this as—sort of a—on the terms of defendant's pleading that she was otherwise eligible to receive a FOID card, didn't have one, had the gun at home, and those are the terms on which she is challenging [the statute]."

A court may not simply assume that alleged factual matters are true when considering an as-applied constitutional challenge. We reiterate that, when a court holds a statute unconstitutional as applied, that holding must be based on an established factual record.

¶ 35                                    CONCLUSION

¶ 36    The circuit court's ruling that section 2(a)(1) of the FOID Card Act is unconstitutional as applied was not necessary to the resolution of this case. Therefore, we remand this cause to the circuit court. We direct that the order entered by the circuit court on February 14, 2018, be vacated. We further direct that the October 16, 2018, judgment order dismissing defendant's information be vacated and then modified to exclude the ruling that section 2(a)(1) is unconstitutional. The modified order is thereupon to be reentered.

¶ 37    Vacated and remanded with directions.

¶ 38    JUSTICE KARMEIER, dissenting:

¶ 39    The majority's decision resolves this appeal based on an issue no one has raised, decides the issue through misapplication of principles we have no reason to discuss, and remands the case to the circuit court for entry of an order that is clearly meritless and serves no purpose. Neither the parties nor the interests of justice will be served by this unexpected and pointless exercise. I therefore respectfully dissent.

¶ 40    Contrary to the majority's suggestion, there is no jurisdictional impediment to our hearing this appeal. Under article VI, section 4(b), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 4(b)), direct appeal lies to this court from judgments of circuit courts imposing a sentence of death and in such other cases as we may specify by rule. Pursuant to that authority, we have enacted Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). That rule expressly provides that "[a]ppeals in criminal cases in which a statute of the United States or of this State has been held invalid shall lie directly to the Supreme Court as a matter of right." *Id.* Our case law makes clear that such appeals may be brought by the State (*People v. Miller*, 202 Ill. 2d 328, 334-35 (2002)) and will lie where a statute has been held unconstitutional as applied, as well as when it has been found facially invalid (see *People v. Fuller*, 187 Ill. 2d 1, 8-10 (1999); *People v. Falbe*, 189 Ill. 2d 635, 638 (2000); *In re Derrico G.*, 2014 IL 114463, ¶ 1).

¶ 41    There is no question that this appeal involves a criminal case. Defendant was charged by criminal information with violating section 2(a)(1) of the FOID Card Act (430 ILCS 65/2(a)(1) (West 2018)), a Class A misdemeanor under the facts alleged here (see *id.* § 14(b)). There is likewise no actual dispute that the circuit court dismissed that charge based on its conclusion that section 2(a)(1) of the FOID Card Act is invalid as applied to defendant under both the second amendment to the United States Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 22). Under the plain

and unambiguous language of Rule 603, we therefore have jurisdiction to hear the State's appeal from that judgment on direct review.

¶ 42　Even if it were true that the lower court had advanced an additional, nonconstitutional basis for its judgment—a proposition that does not withstand scrutiny for reasons I will discuss shortly—that would not alter our authority to exercise direct review. The long-standing rule that courts should refrain from reaching constitutional questions when a case can be resolved on nonconstitutional grounds is merely a jurisprudential principle (*Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 263 (2010) (Karmeier, J., concurring in part and dissenting in part, joined by Garman, J.)). It is not a limitation on our jurisdiction.

¶ 43　While not jurisdictional, the principle that cases should be decided on nonconstitutional grounds whenever possible is certainly an important one. It arose from concern for preserving the stability of the legal system, respecting enactments by the elected representatives of the People, and preventing the normal appellate process from being circumvented (*Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶¶ 19-20), and we strive to be diligent about its enforcement.

¶ 44　We initially sought to accomplish this through *ad hoc* judicial pronouncements of increasing specificity. See *Trent v. Winningham*, 172 Ill. 2d 420, 425-27 (1996); *In re Parentage of John M.*, 212 Ill. 2d 253, 266-67 (2004); *People v. Cornelius*, 213 Ill. 2d 178, 189-90 (2004). Eventually, because of ongoing problems, we were compelled to enact Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006), which implemented principles encapsulated in *Cornelius* and *In re Parentage of John M.* Ill. S. Ct. R. 18, Committee Comment (adopted July 27, 2006); see *In re E.H.*, 224 Ill. 2d 172, 178 (2006). That rule sets out the duties incumbent upon the circuit court when declaring a state statute unconstitutional. It is now the controlling authority on this subject.

¶ 45　Under Rule 18, a court is required to take the following measures when finding a statute, ordinance, regulation, or other law unconstitutional: (1) it must make the finding of unconstitutionality in a written order or opinion or in an oral statement on the record that is transcribed; (2) in its order or opinion it must clearly identify what portion or portions of the statute, ordinance, regulation, or other law it finds unconstitutional; and (3) the order or opinion must clearly set forth the grounds for its finding of unconstitutionality. With regard to the third of these requirements, Rule 18 further specifies that the order or opinion must include the following:

> "(1) the constitutional provision(s) upon which the finding of unconstitutionality is based;
>
> (2) whether the statute, ordinance, regulation or other law is being found unconstitutional on its face, as applied to the case *sub judice*, or both;
>
> (3) that the statute, ordinance, regulation or other law being held unconstitutional cannot reasonably be construed in a manner that would preserve its validity;
>
> (4) that the finding of unconstitutionality is necessary to the decision or judgment rendered, and that such decision or judgment cannot rest upon an alternative ground; and
>
> (5) that the notice required by Rule 19 has been served, and that those served with such notice have been given adequate time and opportunity under the circumstances to

- 11 -

defend the statute, ordinance, regulation or other law challenged." Ill. S. Ct. R. 18(c) (eff. Sept. 1, 2006).

¶ 46    In holding section 2(a)(1) of the FOID Card Act (430 ILCS 65/2(a)(1) (West 2018)) unconstitutional, the circuit court here found that the "[t]he facts of this case are undisputed"; it reviewed the language of the statute at issue, the relevant constitutional provisions and United States Supreme Court precedent; and it concluded:

"In this case the facts show the defendant possessed a gun, in her house, for the purpose of self-defense without a FOID card. To require the defendant to fill out a form, provide a picture ID and pay a $10 fee to obtain a FOID card before she can exercise her constitutional right to self-defense with a firearm is a violation of the 2nd Amendment to the United States Constitution as applied to the States and a violation of Article I, Section 22, of the Constitution of the State of Illinois, as applied to this case only.

*** Based upon the for[e]going the Court finds 430 ILCS 65/2(a)(1) unconstitutional as applied to this case.

*** The Court further finds 430 ILCS 65/2(a)(1) cannot, in this case, reasonably be construed in a manner that would preserve its validity and this finding of unconstitutionality is necessary to the decision in this case and this decision cannot rest upon an alternate ground."

¶ 47    Following this ruling, the State moved for reconsideration, arguing that the circuit court was incorrect on the merits. In the alternative, the State asserted that the court needed to amend its ruling in order to properly comply with Rule 18.

¶ 48    The circuit court denied reconsideration of the merits but supplemented its previous ruling to address concerns over the adequacy of its Rule 18 findings. Specifically, it held:

"To comply with 430 ILCS 65/2(a)(1) a person must have a FOID card on their person when in either actual or constructive possession of a firearm or ammunition. Owning a FOID card is insufficient to comply with the statute. See *People v. Eldens*, 63 Ill.App.3d 554 (Fifth Dist. 1978) and *People v. Cahill*, 37 Ill.App.3d 361 (Second Dist. Second Div. 1976).

A person is in constructive possession of a firearm or ammunition when: (1) The person has knowledge of the presence of a weapon or ammunition, and (2) That person is in immediate and exclusive control over the area where the firearm or ammunition is located.

Due to the language of 430 ILCS 65/2(a)(1) and the Court's interpretation of the statute, it is clear that compliance is impossible when one is in their own home. No person could have their FOID card on their person 24 hours each and every day when firearms or ammunition are in the house.

In addition, every person in the home (family member, friend, spouse, etc.) who has knowledge of the firearms or ammunition and has immediate and exclusive control of the area where the firearms or ammunition is located, who does not have a FOID card, would be in violation of the statute.

Thus, 430 ILCS 65/2(a)(1) is unconstitutional, as applied to this defendant, because it is impossible to comply in the person's own home. As an alternative, if 430 ILCS

65/2(a)(1) is constitutional then it becomes obvious the legislature did not intend the statute to apply in one's own home due to impossibility of compliance."

¶ 49    The circuit court then reiterated the findings it made in its initial order declaring the statute invalid as applied to defendant and made additional findings in an attempt to meet the requirements of Rule 18. Specifically, the court stated that it was further finding,

"in compliance with Supreme Court Rule 18, that the finding of unconstitutionality is necessary to the decision and that such decision cannot rest upon an alternative ground; and that the notice required by Supreme Court Rule 19 has been served and that those served with such notice have been given adequate time and opportunity under the circumstances to defend the statute.

IT IS THEREFORE ORDERED that for the foregoing reasons, and those enumerated in the [previous order], that 430 ILCS 65/2(a)(1) is unconstitutional as applied to the defendant in this case, in violation of the Second Amendment to the United States Constitution, as applied to the States thru [*sic*] the Fourteenth Amendment, and Article I, Section 22 of the Constitution of the State of Illinois, and by reason thereof, this cause is dismissed with prejudice."

¶ 50    Under any fair reading of the foregoing, it is clear that the circuit court was mindful of its responsibilities under Rule 18 and was conscientious about checking off all boxes required by the rule. Once the court supplemented its initial order, the parties themselves did not question its sufficiency under Rule 18. Since 2010, our court has had a screening procedure in place to identify deficient Rule 18 orders before briefing and argument takes place. The order in this case passed that initial screening process. The briefs that were subsequently filed made no mention of a Rule 18 problem. When the case was argued, no member of this court voiced any concern as to whether the requirements of Rule 18 had been satisfied or whether the appeal was properly before us.

¶ 51    That a Rule 18 problem should now prove fatal to the appeal is as surprising to me as I am sure it will be to the parties when they read the majority's opinion. That is especially true given the rationalization my colleagues belatedly advance. Although the circuit court's final written dismissal order explicitly and unambiguously held that "the finding of unconstitutionality is necessary to the decision and that such decision cannot rest upon an alternative ground," the majority has now decided that, no, what the circuit court actually held is that there *was* an alternative basis for granting defendant's motion to dismiss, namely, that the conduct underlying the charges for which defendant is being prosecuted is outside the reach of the FOID Card Act.

¶ 52    That section 2(a)(1) of the FOID Card Act (*id.*), by its terms, does not apply and could not have been intended by the legislature to apply to circumstances like those present in this case—possession of a firearm in one's home by a person who otherwise meets FOID card eligibility requirements—is a theory the defendant in this case has never raised and that was never argued in the circuit court or in the briefs on appeal. It is an invention of the majority based on a single sentence taken out of context.

¶ 53    The sentence that has suddenly emerged as pivotal to the majority's disposition is this one: that "[a]s an alternative, if 430 ILCS 65/2(a)(1) is constitutional then it becomes obvious the legislature did not intend the statute to apply in one's own home due to impossibility of compliance." These words might lend support to the majority's position if read narrowly and

in isolation, but that is not how courts of review are supposed to construe rulings by the circuit court. To the contrary, where, as here, the meaning of a trial court's order is in dispute and requires interpretation, a court of review must consider the entire context in which the order was entered, with reference to the other parts of the record, including the pleadings, motions, and issues before the court and the arguments of counsel (*People v. Ward*, 113 Ill. 2d 516, 526-27 (1986); *People v. Cooper*, 132 Ill. 2d 347, 353-54 (1989); see *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 28), and the court's statements must be given their most logical meaning (*Cornelius*, 213 Ill. 2d at 190).

¶ 54    As noted above, no one in this case attempted to make the argument that defendant's conduct, if proved, would not fall within the express terms of section 2(a)(1) of the FOID Card Act, which provides simply that

> "[n]o person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act." 430 ILCS 65/2(a)(1) (West 2016).

It is not surprising that no one made such a claim. The language of the law is clear and unambiguous. There is no exception, here or in any other provision of the Act, for possession of the firearm, stun gun, or taser within one's home. To read the law as inapplicable to possession within the home, thereby avoiding any challenge to the constitutionality of the law as applied in that circumstance, would therefore require the court to depart from the plain language and meaning of the statute and read into it an exception, limitation, or condition the legislature did not express. That is something courts are not at liberty to do. *In re Hernandez*, 2020 IL 124661, ¶ 18.

¶ 55    If one considers the circuit court's statement in the broader context of the arguments raised by the parties, the constitutional concerns expressed by the circuit court, the requirements of Rule 18, the language of the court's rulings taken as a whole, and the clear prohibition against judicial rewriting of statutes, there is a much more logical explanation for why the circuit court referenced the legislature's intent. It was simply to address whether the statute could "reasonably be construed in a manner that would preserve its validity," a finding expressly required by Rule 18(c)(3) (eff. Sept. 1, 2006).

¶ 56    In my view it is evident that the circuit court would have answered this question in the negative. After all, it invoked no legal authority and cited no principles of statutory construction that would support an alternative, "saving" construction of the law. Instead, as it had in its earlier ruling, it expressly held that "the finding of unconstitutionality is necessary to the decision and that such decision cannot rest upon an alternative ground."

¶ 57    In sum, constitutional concerns—not statutory ones—lay at the center of the circuit court's reasoning. But for the circuit court's view that the statute could not pass muster under the second amendment as applied, the circuit court would not have dismissed the charges against defendant. Accordingly, I do not believe we can fairly assert that the circuit court's decision compromised the substantive principles underlying Rule 18 and should preclude us from proceeding to the merits of the appeal.

¶ 58    Even if I agreed with the majority's newly discovered and legally unsound interpretation of the circuit court's ruling, I could not join in its resolution of the appeal. Contrary to the majority's view, remand to the circuit court is not required. Rule 18 provides that, when a

circuit court's judgment fails to comply with the rule, our court "may" summarily vacate and remand the judgment for noncompliance. Ill. S. Ct. R. 302(c)(2) (eff. Oct. 4, 2011); *Bryant v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 473, 477 (2007) (*per curiam*). That is so in criminal as well as civil cases. See Ill. S. Ct. R. 612(b)(2) (eff. July 1, 2017). Significantly, however, the rule, by its terms, does not obligate us to summarily vacate and remand in every case. We have never held otherwise. To the contrary, when appropriate, we have not hesitated to address nonconstitutional issues on direct review even where we have determined that a circuit court erred in making findings under Rule 18. *People v. Jackson*, 2013 IL 113986, ¶¶ 14-25. Moreover, even where we have determined that a case originally docketed as a direct appeal from an order declaring a statute invalid is not eligible for appeal on that basis at all, we have proceeded to the merits in the exercise of our supervisory authority when circumstances warrant. See *Vasquez Gonzales*, 2018 IL 123025, ¶ 17 (and numerous cases cited therein). Had the majority consulted relevant precedent from this century—or even just the past decade—it would have recognized these principles.

¶ 59    There is good reason to proceed to the merits here. Remand to the circuit court to enter a new order dismissing the case on statutory rather than constitutional grounds is a meaningless and wasteful act. As I have noted, no plausible claim can be made that the conduct with which defendant is charged falls outside the plain language of section 2(a)(1) of the FOID Card Act (430 ILCS 65/2(a)(1) (West 2018)). To order the circuit court to enter such an order would be tantamount to compelling it to make a legal determination that none of the parties requested, that the court itself never meant to make, and that would have no chance of being affirmed on appeal. And when the forced order is ultimately reversed by the appellate court, as the law would require, what will happen? The circuit court will simply enter another order declaring the statute invalid, putting the parties and the litigation in precisely the same position they are now. Nothing will have been gained. Time will have been lost. Judicial resources will have been wasted. Defendant will remain in legal limbo.

¶ 60    I take equally strong exception to the majority's contention that the circuit's court's decision to invalidate the statute "as applied" was premature and improper because the court had not yet conducted an evidentiary hearing and the record was not sufficiently developed. My colleagues' discussion of this point is, of course, irrelevant to their ruling. If the constitutional challenge is not properly before us to begin with, what difference does it make whether the circuit court's ruling may also have been premature?

¶ 61    Having just set aside a ruling by the circuit court on the grounds that the issue should not have been reached, the majority fails to appreciate the irony in its own decision to address a question that is not necessary to its disposition. My complaint, however, is not that the majority is inconsistent. It is that the majority is wrong.

¶ 62    Contrary to my colleagues, I fail to see any additional facts that need to be established beyond those to which the parties have already stipulated. It is true that the State pointed to some factual gaps in its motion to reconsider and at the hearing on that motion. Significantly, however, it is not complaining about such gaps now, and they are not the basis for its appeal before our court.

¶ 63    To properly understand why a further hearing is unnecessary, it is important to understand the basis for defendant's challenge. During the hearing on the motion to reconsider, counsel for defendant brought the theory of the case into focus. He explained:

"The right to possess or own guns for defense of yourself and your home is distinct from having guns in general. So it's very important that the government not be able to regulate your right to be safe in your own home, even if it can regulate the use of guns outside the home.

So I'm not asking here and haven't—in my motion haven't argued that the government cannot regulate the possession of firearms, that they cannot require a FOID card; just that it's unreasonable to require it when the firearm is only used for self-defense within the privacy and sanctity of your home.

So I'm not arguing that you can't regulate, because I think the Court very clearly says that you can, but if you look and you read *McDonald* and you read *Heller*, you see how important the Court's emphasis is on being able to have a gun in your own home to protect yourself. They use the words, 'This is the core of the Second Amendment.'

As far as I know—and I don't believe counsel has pointed any cases out to the Court—there is no Illinois Supreme Court case or there is no United States Supreme Court case that determines a person cannot possess a weapon in their own home for self-protection unless they have some kind of card.

\* \* \*

It seems to me that any regulation that deprecates or requires someone to purchase a card and go through all the hoops necessary to have a card to protect yourself in your own home is one regulation too far.

Again, I'm not arguing that the FOID Card Act is facially invalid, that it's unconstitutional as a whole, but I think as to this kind of person in their home who otherwise qualifies for a card, they should not be required to purchase a card to defend theirselves [*sic*] in their home."

¶ 64 In light of these clarifying remarks by defendant's attorney, it is evident that, for purposes of defendant's constitutional challenge, only four core facts are relevant: (1) she was charged with violating the FOID Card Act after police discovered a rifle in her bedroom, (2) she kept the weapon in her home for self-defense, (3) she had not sought or obtained a FOID card, and (4) she met the requirements for a FOID card and could have gotten one had she applied.

¶ 65 At this stage in the proceedings, neither defendant nor the State takes issue with any of these points. The majority is incorrect when it suggests otherwise. The circuit court's dismissal order recited that the facts were undisputed, and that finding has not been challenged by the parties on appeal. Holding an evidentiary hearing would therefore serve no purpose. That is especially true considering that this is a criminal proceeding and that the risks of self-incrimination would likely deter defendant from taking the witness stand to elaborate further on any of the circumstances relevant to her prosecution for violation of the FOID Card Act.

¶ 66 Although the trial court hypothesized about situations where other persons, including friends and family members, are also present in the home and have knowledge and/or control of the weapon, no hearing was necessary to establish those circumstances either because they are simply not germane to defendant's core position, which, to repeat, is that she could have met the requirements for obtaining a FOID card but could not constitutionally be required to have one as a condition of having a gun in her own home for self-defense. And while such factors could be relevant to other persons in other circumstances, "as-applied" challenges are limited to the particular facts and circumstances actually before the court. See *Napleton v.*

*Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). The circuit court's improper consideration of hypotheticals is therefore not a proper basis for declaring that court's ruling premature. Rather, it is grounds for reversing on the merits.

¶ 67 For the foregoing reasons, I cannot join in the majority's resolution of this case. We have jurisdiction, the circuit court properly complied with Rule 18, it did not err in reaching the constitutional question raised by defendant in her motion to dismiss, all the facts necessary to resolution of defendant's "as-applied" challenge are before us, and remand would serve no valid purpose. Accordingly, this case should not be sent back to the circuit court with directions. Rather, we should retain the appeal and resolve it on the merits. I therefore respectfully dissent.

¶ 68 JUSTICE THEIS joins in this dissent.

¶ 69 JUSTICE MICHAEL J. BURKE took no part in the consideration or decision of this case.