THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* William McKee, v. DANIEL H. GILMER, Master in Chancery for Pike county.

*Application for a Mandamus.*

The Circuit Court, sitting as a Court of Chancery, may restrain, by injunction, a Commissioner from executing a decree of sale.

The duties and responsibilities of a Commissioner in Chancery under a decree of sale are similar to those of a sheriff under an execution at Law. Injunctions may issue in the one case as well as in the other, though the desired end might generally be accomplished by a motion in the original case. The interest of third persons, however, might intervene, or new rights or equities arise, which would render a resort to Chancery necessary in order to a fair examination and protection of their rights.

A Commissioner in Chancery has no right to inquire whether an injunction issued against him was properly sued out, but must obey its mandate.

A *mandamus* can only be issued to compel a party to act when it was his duty to act without it.

The Circuit Court cannot, in a proceeding by injunction of a decree, inquire into the rights of parties existing antecedent to the time when the case was set for a hearing, and which might have been presented at that time.

APPLICATION for a *mandamus*. The following are copies of the notice served, and of the application to the Supreme Court:

Jacksonville, December 1st, 1848.

Murray McConnell, Esquire,

Sir:

You will please to take notice that at the December term 1847, of the Supreme Court of the State of Illinois, in the case of William McKee, (myself) executor of Jesse McKee, deceased, complainant in Chancery v. John Manchester, Thomas Manchester, Mark W. Delahay, Holaway W. Vansyckle, James A. McDougall, Murray McConnell (yourself), John Mathews, George N. Manchester, and George Dewell, defendants, the said Court partially reversed the decree that was recorded in said cause at the September term, 1844, of the Circuit Court of Pike county, in said State, and remanded said cause with directions to the said Circuit Court, "to

render a decree and proceed consistently with the princi-
ples of" the Opinion rendered in said cause by said Su-
preme Court. That said cause was so remanded, and
reviewed in the name and style of "William McKee, execu-
tor of Jesse McKee, deceased, complainant in Chancery v.
Mariah Manchester, Julia Manchester, Mary Adeline Man-
chester, and Thomas Collins Manchester, heirs at law of
John Manchester, deceased, John Mathews, administrator of
said deceased, and in his (the said John Mathews,) own
right, Thomas Manchester, George N. Manchester, George
Dewell, Mark W. Delahay, Holaway W. Vansyckle, Murray
McConnell, and James A. McDougall, defendants," at the
April term, 1848, of the said Circuit Court and a decree was
rendered by said Court on the 8th day of April, 1848, con-
sistent with the determination of said Supreme Court, in the
premises, and appointing and requiring Daniel H. Gilmer as
Special Commissioner, to sell and convey on twenty days'
notice, of &c. for cash all the right, title and interest, of said
defendants of, in and to certain real estate, set forth in said
decree, if they, or some of them, should not in ninety days
pay to said Commissioner, the sum of two thousand, six hun-
dred and seventeen 93-100 dollars, ($2617·93 cents,) with
interest from April 8th, 1848, at the rate of six (6) per cent.
and costs of said suit. That said defendants have not, nor
hath either of them paid any part of said sum of money or
costs. That you on the 7th of July, 1848, filed a bill in
Chancery against the said John Mathews, Thomas Hollow-
bush and Augustus R. Burbank in the said Circuit Court,
and that on the sixth day of the September term, 1848, of
said Court, you amended your said bill, and obtained an
order from the Judge of said Court, restraining and enjoin-
ing the execution of the decree last aforesaid. That I, by
my solicitor, David A. Smith, on the same day, in said
Court, and to use of the said Thomas Hollowbush, Augustus
R. Burbank, and John Mathews, submitted a motion for a
peremptory order upon the said Special Commissioner to
execute the decree aforesaid, to proceed forthwith on twenty
days' notice to sell the property described in the decree,

notwithstanding your said injunction. That said motion was overruled, and I, by my said solicitor, excepted to the opinion of said Court in overruling said motion. That on the third (3rd) day of the next term of the Supreme Court of said State, to be holden for the Second Division of said State at Springfield on the eighteenth inst., I shall, by my solicitor, file a petition to said Court, accompanied with the just, full and true transcript of the records and proceedings aforesaid duly certified, and there, or as soon thereafter as I can be heard by my counsel, shall move said Court on said petition to grant a peremptory mandamus to the said Special Commissioner, requiring him to execute said decree by sale of, &c. as aforesaid, or a peremptory mandamus to the Judge of the said Circuit Court, requiring him to order the said Special Commissioner so to execute said decree, or for such other or further order as the Supreme Court has power and authority to make in the premises, to secure the supremacy of law, by carrying into complete execution its determination in the matter aforesaid, according to the laws, customs and usages of this State, and according to the rules and principles of the Common Law.

If you please, you will appear and resist the matter and things proposed in the premises.

Very respectfully yours,

William McKee,<br>
executor of John McKee, deceased,<br>
by his solicitor,<br>
D. A. Smith.

Jacksonville, December 2d, A. D. 1848.

I served Murray McConnell, Esq., with a copy of the foregoing notice. 　　　(Signed)　　　David A Smith.

State of Illinois, ss.

To the Honorable, the Judges of the Supreme Court of said State sitting at Springfield for the Second Division of said State, December term, A. D. 1848.

In the name of the People of the State of Illinois, William McKee, the person referred to in the foregoing annexed no-

tice respectfully relates and shows to your Honors, that he brings here into Court, and prays, that the same may be taken as a part of this petition, just, full and true transcripts of the records and proceedings referred to in said notice, marked Exhibit (A); that the facts stated in said notice are true, and asks that the said notice may be considered and treated as a part of this petition. He states that a copy of said notice was duly served upon Murray McConnell, Esq., the person referred to in said notice, on Saturday, the 2d day of December, A. D. 1848. That the course which he is pursuing in the premises to defeat and undermine the Opinion of this Honorable Court, as the Court of last resort, rendered as aforesaid, is unprecedented, unjust, extra-judicial, vexatious and oppressive, and that if such a practice is tolerated by this Honorable Court, that in no case can its decision put an end to strife, if a party whose rights have been fully and finally determined upon by it, can successfully resort to such shifts and expedients as the said Murray McConnell is attempting to perpetrate in the premises. That the said Daniel H. Gilmer, Special Commissioner, is a resident of the said county of Pike, and ready and willing, but for the restraining order of injunction so irregularly and improperly obtained as aforesaid by the said Murray McConnell, to execute the decree obtained as aforesaid in favor of your relator, at the April term, 1848, of the said Circuit Court of Pike county, pursuant to the principles of the Opinion of this Honorable Court rendered as aforesaid; that the said Murray McConnell is endeavoring to evade the execution of said decree (to which he is, and was a party as aforesaid,) by matters which transpired long before said decree was rendered, and which he ought to have pleaded and relied upon in the cause in which said decree was rendered. That the said Circuit Court in the said injunction suit of the said Murray McConnell had no rightful cognizance of, or jurisdiction of the said decree to restrain or impede its due and prompt execution. Forasmuch then as your relator is utterly without redress in the premises unless, &c., he prays your Hon-

ors for the relief that he has notified the said Murray Mc-Connell that he (your relator,) will ask for, and which is particularly indicated in said notice, and as in duty bound your relator will ever pray, &c.

The People of the State of Illinois,
ex relatione William McKee,
by his solicitor,
David A. Smith.

State of Illinois, ⎰ Sct.
Sangamon Co., ⎱

This day appeared before the undersigned, Clerk of the Supreme Court of said State for the Second Division, David A. Smith, who made oath in due form of law, that the foregoing notice and petition are true in substance and fact, and that he served Murray McConnell, Esq. with a copy of said notice on the 2d inst.

David A. Smith.

Sworn to and subscribed before me as above, the 20th day of December, A. D. 1848.

W. B. Warren, Clk.

*D. A. Smith*, for the relator, cited the following authorities: Rev. Stat. title, "*Courts*," § 7; 11 Peters, 173; 12 do. 343, 491, 493; 1 Blackf. 155; 2 Pick. 419; 10 do. 244; 20 do. 495; 21 do. 259; 18 Wend. 79; 20 do. 658; 4 Ark. 302; 2 Ala. 519.

*M. McConnell* resisted the application.

The Opinion of the Court was delivered by

CATON, J.   In pursuance of a mandate from this Court, the Circuit Court of Pike county entered a decree in the case of the present relator against Thomas Manchester and others, reported in 4 Gilman, 511, directing that the defendants, or some of them, within ninety days, should pay to the complainant the sum of $2617·93, and interest; and in default thereof, the present defendant, who was thereby appointed a Commissioner for that purpose, should sell the lands

in the decree mentioned, and with the proceeds pay that amount. Afterwards, McConnell, one of the defendants in that bill, as to whom it was taken as confessed, filed his bill in that Court, showing that McKee had transferred his interests under that decree to John Mathews, Thomas Hollowbush and Augustus R. Burbank; that he had offered to pay McKee the amount of the decree, who refused to receive it for the reason that he had assigned as above stated; that he had then applied to D. A. Smith, solicitor for the assignees, by whom he was informed that they would not receive the money, but denied the right of the complainant to pay the same, and insisted upon a sale of the premises. McConnell claims to be the owner of the land, and avers that the assignees of McKee are indebted to him in a much larger sum than the amount of the decree, for work, and timber taken from the land, and otherwise on account of the enjoyment of the premises, in the possession of which they had been since 1831, and that they were insolvent. The bill prays for an injunction, and that the complainant's claim against the assignee may be set off against the amount due them under the decree. An injunction was issued by the Circuit Court, restraining the Commissioner from going on with a sale of the lands. That bill has not been brought to a hearing, nor has the injunction been dissolved. A motion was made in the Circuit Court in the name of McKee, the complainant in the first bill, for an order on the Commissioner to go on and sell the property, notwithstanding the injunction, which was denied. This application is now made here, for a *mandamus* against the Commissioner, commanding him to proceed with the sale, or against the Circuit Court commanding it to make such an order as was applied for.

As that decree in the Circuit Court was entered in pursuance of a mandate from this Court, it could not be appealed from, but was final and conclusive upon all of the parties as they were adjudicated upon and determined by this Court. In effect, the decree was the same as if it had been entered up here; and this Court would, by *mandamus*, compel the the Circuit Court not only to enter such decree as it had di-

rected, but to enforce and execute it, nor could its execu-
tion be interfered with or obstructed, either by that or any
other Court, any more than a direct decree of this Court. It
was, in fact, a decree of this Court promulgated through the
Circuit Court.

The main question in this case is one of jurisdiction.
Could the Court of Chancery, under any circumstances, re-
strain, by injunction, the Commissioner from making the sale
contemplated by the decree? If it could restrain that sale
under any given circumstances, then its jurisdiction to con-
trol the acts of the Commissioner in that respect, is estab-
lished. That such jurisdiction existed, we entertain no
doubt. The order of sale was only conditional. If the
money was paid by any of the defendants, then the demand
of the complainant was satisfied, and the decree accomplish-
ed, and no authority for the sale remained. Indeed, many
circumstances, subsequent to the decree, might have arisen
which would have rendered a sale improper and unjust. The
duties and responsibilities of the Commissioner under the de-
cree were very similar to those of the sheriff with an exe-
cution at law, and nothing is more common than to restrain
him, by injunction, from proceeding in a particular way or
to a certain extent; and it would be the same whether the
execution issued from this or from a Circuit Court. In that
case, as well as in this, the object might be accomplished in
most instances by a motion in the original cause; yet, some-
times, the interest of other persons might intervene, or new
rights or equities arise, which would render it necessary to
resort to a Court of Chancery to have them fully examined
and duly protected. So long as the improper action of the
Commissioner under the decree might be controlled by in-
junction, he could not treat it as a nullity, because it might
have been imprudently issued. He had no right to inquire
whether a proper case was made for the injunction or not.
Being subject to the jurisdiction and control of the Court, he
was bound to obey its order without further inquiry.

As it was the duty of the Commissioner to obey the injunc-
tion, we cannot compel him to violate it. A *mandamus* can

only be issued to compel a party to act when it was his duty to act without it. It confers upon him no new authority. We cannot look into the injunction bill to see whether a proper case was made or not. The orders made in that cause are not before us for revision. We can neither re- verse nor affirm them now. They must continue in force till they are vacated by the Circuit Court, or are reversed on ap- peal or writ of error; if the Court had any authority to make them. We have already seen that a case might have been made authorizing the injunction, and that we cannot now in- quire whether an error was committed in awarding it. The Circuit Court could not inquire into the rights of the parties existing antecedent to the time when that suit was set for hear- ing and which might have been presented there, for those were irrevocably fixed by the decision of this Court; but rights ac- cruing subsequently, which, of course, could not have been passed upon or presented in the former suit, were proper for its consideration, and an injunction restraining the sale may have been necessary for the protection of those rights. In this, the process of injunction was no more liable to abuse than in many other cases.

The application for a *mandamus* must be denied with costs against the relator.

*Application denied.*