**2022 IL 127201**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

————————

(Docket No. 127201)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
VIVIAN CLAUDINE BROWN, Appellee.

*Opinion filed June 16, 2022.*

CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Theis, Neville, and Carter concurred in the judgment and opinion.

Justice Michael J. Burke dissented, with opinion, joined by Justices Garman and Overstreet.

**OPINION**

¶ 1     This is the second time this case has come before us on direct appeal. In *People v. Brown*, 2020 IL 124100, this court vacated the judgment of the circuit court of White County and remanded the cause with directions to enter a specific order. On

remand, however, the circuit court concluded it would not be in the "best interests of justice" to follow this court's directions and entered a different order. Because the circuit court had no authority to set aside the directions of this court and enter a different order, we must again vacate and remand.

¶ 2                                BACKGROUND

¶ 3        On May 5, 2017, defendant Vivian Brown was charged in a one-count criminal information with violating section 2(a)(1) of the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/2(a)(1) (West 2016)). This provision requires a person who possesses a firearm in Illinois to have a Firearm Owners Identification (FOID) card issued by the Department of State Police.

¶ 4        On September 26, 2017, defendant filed a motion asserting that section 2(a)(1) was unconstitutional as applied under the second amendment to the United States Constitution (U.S. Const., amend. II). In this motion, defendant alleged that on March 18, 2017, White County sheriff's officers went to her rural home outside Carmi, Illinois, in response to a report from her estranged husband that she was shooting a gun inside the house. Once there, the officers found no evidence that any shots had been fired but did find defendant in possession of a .22-caliber, single-shot, bolt-action rifle that she kept in her home for self-defense. Defendant admitted in her motion that she did not have a FOID card but alleged that she was a law-abiding adult who would have been eligible to receive a FOID card had she applied for one. Defendant maintained that, as applied to these alleged facts, section 2(a)(1) criminalized the mere possession of a rifle in her home and, in so doing, violated her fundamental right to self-defense under the second amendment. No response to defendant's motion was filed by the White County State's Attorney.

¶ 5        On February 14, 2018, the circuit court entered a written order finding section 2(a)(1) unconstitutional as applied both under the second amendment and article I, section 22, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 22). This order did not dismiss the information.

¶ 6        Following the entry of the February 14, 2018, order, the Illinois Attorney General intervened (see Ill. S. Ct. R. 19 (eff. Sept. 1, 2006)) and filed a motion to reconsider. On October 16, 2018, the circuit court entered a written judgment order

that denied the Attorney General's motion to reconsider, supplemented the February 14, 2018, order with additional material, and dismissed the criminal information. The additional material included by the circuit court in its judgment order "consisted primarily of a statutory analysis in which the court concluded the legislature did not intend for the FOID Card Act to apply in the home because such an interpretation would lead to absurd and unworkable results." *Brown*, 2020 IL 124100, ¶ 30. Thus, the circuit court's October 16, 2018, judgment order dismissed defendant's case on two grounds: first, that section 2(a)(1) was unconstitutional as applied and, second, in the alternative, that the information failed to state an offense because the legislature did not intend for section 2(a)(1) to apply to the possession of a firearm in the home.

¶ 7    The State sought direct appeal to this court under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013), which allows for direct appeal in criminal cases in which a statute has been held invalid. However, this court, citing *Trent v. Winningham*, 172 Ill. 2d 420 (1996), and *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443 (1999), concluded that direct appeal was unavailable. *Brown*, 2020 IL 124100.

¶ 8    As this court in *Brown* explained, both *Trent* and *Hearne* hold that, when a circuit court declares a statute unconstitutional and, at the same time, provides an alternative, nonconstitutional basis for relief, the finding of unconstitutionality cannot " 'properly serve as a basis for direct supreme court review.' " *Id.* ¶¶ 24, 32 (quoting *Hearne*, 185 Ill. 2d at 455). This rule derives from the common-law principle that courts "should not compromise the stability of our legal system 'by declaring legislation unconstitutional when the particular case does not require it.' " *Id.* ¶ 21 (quoting *Trent*, 172 Ill. 2d. at 425). Allowing direct review when a circuit court unnecessarily declares a statute unconstitutional would upset the "normal appellate process" and bring before this court as a matter of right a case that might otherwise not have been allowed as a matter of permissive review. *Id.* In other words, the case would come before this court on direct review "only because the circuit court had taken an action that it should not have." *Id.* To avoid this outcome, *Trent* and *Hearne* both concluded that direct appeal cannot lie in this court, even though a statute has been declared invalid.

¶ 9    This court in *Brown* further noted that both *Trent* and *Hearne* had acknowledged "there might be reasons of efficiency or judicial economy to address

the constitutional issue." *Id.* ¶ 22. However, both cases had determined that "these interests could not justify holding a statute unconstitutional before it was necessary to do so." *Id.*; see also *id.* ¶ 26 (" '[t]he interest in the stability of the legal system outweighs the potential benefit of increased efficiency that may be gained by addressing a constitutional issue before it is necessary to reach it' " (quoting *People v. Hampton*, 225 Ill. 2d 238, 245 (2007))).

¶ 10 Consistent with the approach taken in *Trent* and *Hearne*, this court in *Brown* vacated the circuit court's finding that section 2(a)(1) was unconstitutional and remanded the cause with directions to enter a modified judgment order that excluded that finding. *Id.* ¶ 32. This was done "to preserve the State's right to seek review in the appellate court of the circuit court's nonconstitutional basis for dismissing defendant's information" and to " 'permit the normal appellate process to run its course' " *Id.* (quoting *Trent*, 172 Ill. 2d at 426).

¶ 11 The conclusion of this court's opinion in *Brown* stated:

"The circuit court's ruling that section 2(a)(1) of the FOID Card Act is unconstitutional as applied was not necessary to the resolution of this case. Therefore, we remand this cause to the circuit court. We direct that the order entered by the circuit court on February 14, 2018, be vacated. We further direct that the October 16, 2018, judgment order dismissing defendant's information be vacated and then modified to exclude the ruling that section 2(a)(1) is unconstitutional. The modified order is thereupon to be reentered.

Vacated and remanded with directions." *Id.* ¶¶ 36-37.

¶ 12 Justice Karmeier dissented in *Brown*. While acknowledging that the circuit court's October 16, 2018, order could be read as providing a nonconstitutional ground for dismissing defendant's information, the dissent concluded that the better reading of the order was that the circuit court had not intended to do so. *Id.* ¶ 53 (Karmeier J., dissenting, joined by Theis, J.). Further, even if the circuit court had provided an alternative, nonconstitutional ground for dismissal, the dissent disagreed with the majority's determination that the cause should be remanded so the normal appellate process could unfold. *Id.* ¶ 58. The dissent reasoned that the statutory ground for dismissal provided by the circuit court was "clearly meritless" (*id.* ¶ 39) and, therefore, remanding to the circuit court to enter a new order

- 4 -

dismissing the case on statutory rather than constitutional grounds would be "a meaningless and wasteful act" (*id.* ¶ 59) and a "pointless exercise" (*id.* ¶ 39). The dissent concluded that remanding the cause to the circuit court to allow the normal appellate process to take place would not serve "the interests of justice." *Id.*

¶ 13    No petition for rehearing was filed by either party. The mandate of this court issued to the circuit court on May 28, 2020.

¶ 14    When the cause was remanded, the matter proceeded in the circuit court before a new judge, as the judge who first heard the case had since retired. Initially, the circuit court entered the modified order as directed by this court, dismissing defendant's information on the nonconstitutional ground in an order dated June 4, 2020, thereby granting defendant complete relief. Subsequently, however, on June 9, 2020, counsel for defendant filed a motion asking the circuit court to "reconsider its modified order" and to vacate it.

¶ 15    The motion to reconsider mirrored the reasoning of the dissent in *Brown*. The motion asserted that the dissent was "correct" when it concluded that the statutory basis for dismissing defendant's information was meritless. The motion quoted the dissent in *Brown* at length and repeated the dissent's conclusion that allowing the normal appellate process to take place would be "a meaningless and wasteful act" (*id.* ¶ 59) that would cause unnecessary delay. Citing *McClain v. Illinois Central Gulf R.R. Co.*, 121 Ill. 2d 278, 287 (1988), the motion asserted that a circuit court has the authority to reconsider and correct a previous order entered in the same case. The motion therefore urged the circuit court to "reconsider its Modified Order of June 4, 2020, find it legally erroneous and vacate it." No hearing was held on this motion, and no written response was filed by the White County State's Attorney.

¶ 16    On June 15, 2020, the circuit court entered a written order granting the motion to reconsider. The circuit court's order copied the motion to reconsider verbatim and, like the motion, explicitly adopted the reasoning of the dissent in *Brown*. The order concluded that it was "in the best interests of justice" that the modified order entered on June 4, 2020, be vacated. Accordingly, the circuit court vacated the modified order, reinstated the criminal information, and allowed defendant "to present whatever motions deemed appropriate" to challenge the information.

¶ 17    On June 19, 2020, defendant filed a new "Motion to Find Statute Unconstitutional," which renewed the argument that section 2(a)(1) was unconstitutional as applied to defendant. The Illinois Attorney General again intervened and filed a written response. Following a hearing, the circuit court granted defendant's motion in a written order dated April 26, 2021. The circuit court's new order contained only the finding that section 2(a)(1) was unconstitutional as applied. The State again appealed directly to this court. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013).

¶ 18    After briefing was completed, this court ordered the parties to submit supplemental briefs addressing whether the circuit court's June 15, 2020, order vacating the June 4, 2020, modified order violated this court's mandate in *Brown* and whether the circuit court could entertain defendant's motion to reconsider, given that a party generally "cannot complain of an error that does not prejudicially affect that party" (*Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36).

¶ 19                                ANALYSIS

¶ 20    The circuit court's order of April 26, 2021, finding section 2(a)(1) of the FOID Card Act unconstitutional, and the order of June 15, 2020, vacating the modified order of June 4, 2020, must both be vacated because the court had no authority to enter those orders. The controlling rule is clear and unconditional. When a cause is "remanded by the reviewing court with instructions to the circuit court to enter a specific order, the reviewing court's judgment is, with respect to the merits, 'the end of the case,' and there is 'nothing which the circuit court [is] authorized to do but enter the decree.' " *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 49 (quoting *Smith v. Dugger*, 318 Ill. 215, 217 (1925)). "[T]he circuit court has no discretion on remand to take any further action on the merits, but must do only as directed." *Id.*

¶ 21    This rule is not new, having been stated by this court many times, over many years. As early as 1873, for example, this court observed that, "where a case has been tried in this court, and remanded with specific directions to dismiss the bill, or do some other act, the court below has no power to do any thing but carry out the specific directions." *Boggs v. Willard*, 70 Ill. 315, 316 (1873). It is the duty of the circuit court to execute the mandate of this court, and where our directions are

"precise and unambiguous," the circuit court may not look elsewhere for authority to change the mandate's meaning or direction. *Fisher v. Burks*, 285 Ill. 290, 293 (1918); see also, *e.g.*, *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308 (1981) ("The trial court may only do those things directed in the mandate.").

¶ 22     Our mandate in *Brown* was "precise and unambiguous" (see *Fisher*, 285 Ill. 2d at 293). The circuit court was directed to enter a modified order dismissing defendant's information on the alternative nonconstitutional ground, thereby allowing the normal appellate process to proceed. The circuit court concluded, however, that it would not be in the "best interests of justice" to enter such an order. The circuit court had "no power" (*Boggs*, 70 Ill. at 316) to set aside this court's directions. In doing so, the circuit court violated the mandate of this court.

¶ 23     Before this court, both parties stress that the circuit court did initially enter the modified order as directed by this court and only set it aside subsequently, in response to defendant's motion to reconsider. The circuit court, in granting the motion, stressed this point as well, noting that a circuit court may reconsider its prior orders. The parties further note that this court contemplated appellate review of the statutory argument for dismissing defendant's information and, from this, contend it was permissible for the circuit court to entertain defendant's motion and vacate the June 4, 2020, modified order. Thus, according to the parties, the mandate of this court was not violated. We disagree.

¶ 24     The idea that the circuit court could entertain defendant's motion to reconsider and vacate the June 4, 2020, modified order reflects a fundamental misunderstanding of the nature of this court's mandate and the modified order. As this court explained in *Price*, when a judgment of the circuit court is reversed or vacated by this court and the cause is remanded with specific directions, the order entered on remand is not that of the circuit court. Rather " '[i]t is, in fact, the judgment of this court promulgated through the trial court.' " (Emphasis omitted.) *Price*, 2015 IL 117687, ¶ 49 (quoting *Smith*, 318 Ill. at 217). In entering the order on remand, the circuit court is merely performing the " 'ministerial act' " of implementing this court's judgment. *Id.* (quoting *Gospel Army v. Los Angeles*, 331 U.S. 543, 546 (1947)). As such, the order entered on remand " 'is final and conclusive upon all the parties' " and " 'must be regarded as free from error.' " *Id.* (quoting *Smith*, 318 Ill. at 217).

¶ 25    The circuit court had no authority to entertain defendant's motion to reconsider or to vacate the June 4, 2020, modified order because that order was not, in fact, the circuit court's order. It was the judgment of *this* court, promulgated through the circuit court. *Id.* A circuit court has no power to set aside a judgment of this court or any reviewing court. *Id.* ¶ 39. For this reason, when a reviewing court remands a cause with directions to enter a specific order, the mandate " 'must be enforced as written. Relief from its directions, even though manifestly erroneous, can be had only in the appellate court whose judgment it is.' " *Flanigan v. McFeely*, 120 A.2d 102, 105-06 (N.J. 1956) (quoting *Plainfield-Union Water Co. v. Mountainside*, 102 A.2d 1, 4 (N.J. 1954)).

¶ 26    This must of course be the governing rule. If it were otherwise, a dissatisfied party could simply move in the circuit court following a remand to have the reviewing court's directions set aside, effectively upending our hierarchical judicial system. And that is precisely what occurred in this case. Defendant's motion to reconsider was explicit in arguing that the decision of this court in *Brown* was incorrect and should not be followed. It was, in short, an "impermissible attack on the judgment rendered by this court" in *Brown*. *Price*, 2015 IL 117687, ¶ 52.

¶ 27    There is a means for a dissatisfied party to seek reconsideration of a decision of this court. Under Illinois Supreme Court Rule 367 (eff. Nov. 1, 2017), the party may file a petition for rehearing. Defendant in this case did not file one. A party may not ignore the requirements of Rule 367, then move in the circuit court to overrule this court.

¶ 28    Similarly, the circuit court's conclusion that the dissent in *Brown* was correct and that the "best interests of justice" required it to disobey this court's directions was plainly error. A circuit court may disagree with the resolution of a case provided by a reviewing court, but once the reviewing court has rendered its decision and issued its mandate, it must be obeyed. A circuit court

> "cannot amend, alter, or refuse to apply an appellate court's mandate simply because an attorney persuades the court that the decision giving rise to the mandate is wrong, misguided, or unjust. A [circuit] court can, of course, wax eloquent about how wrong the appellate court is, but after the waxing wanes the mandate must be followed." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 844 (11th Cir. 2018).

¶ 29 Defendant's motion to reconsider was an inappropriate and impermissible attack on this court's judgment in *Brown*. The circuit court had "no power whatever" (*People ex rel. McLaren v. DeBoice*, 377 Ill. 634, 639 (1941)) to entertain defendant's motion or to take any action other than entering the modified order.

¶ 30 We recognize that the parties are clearly anxious to have this court review the circuit court's order of April 26, 2021, finding section 2(a)(1) unconstitutional as applied. Indeed, in the circuit court, counsel for defendant was so intent on reaching the constitutional issue that he took the extraordinary step of moving to vacate the June 4, 2020, modified order—an order that granted his client complete relief in a criminal case—even though counsel was appearing before a new judge and had been given no assurance on the record as to how that judge might rule on any future defense motions. Nevertheless, the parties' desire to have this court review the circuit court's April 26, 2021, order does not solve the fundamental problem presented here: to review the circuit court's order finding section 2(a)(1) unconstitutional, this court would first have to conclude that the circuit court had the authority to enter that order. And to reach that conclusion, we would have to hold that a circuit court possesses the power to set aside the directions of this court. We cannot take that step.

¶ 31 "Mandates of this court are not to be treated lightly but are to be obeyed." *Id.* Where the cause is remanded by this court "with specific directions, the court below has no discretion, but must pursue the mandate" of this court. *Chickering v. Failes*, 29 Ill. 294, 302-03 (1862). Accordingly, the circuit court's orders of April 26, 2021, and June 15, 2020, must be vacated. The cause is remanded to the circuit court to reenter the modified order that was originally entered on June 4, 2020, at the direction of this court. On remand, the circuit court shall not entertain any motion from any party, nor take any action other than entering the modified order. Because the circuit court's orders must be vacated, we do not reach any other issue in this appeal.

¶ 32                                          CONCLUSION

¶ 33 For the foregoing reasons, the circuit court's orders of April 26, 2021, and June 15, 2020, are vacated. The cause is remanded to the circuit court to reenter the

modified order that was originally entered on June 4, 2020, at the direction of this court. On remand, the circuit court shall not entertain any motion from any party, nor take any action other than entering the modified order.

¶ 34    Vacated and remanded with directions.

¶ 35    JUSTICE MICHAEL J. BURKE, dissenting:

¶ 36    The last time this case was before the court, Justices Karmeier and Theis referred to this court's remand as an "unexpected and pointless exercise" and a "meaningless and wasteful act." *People v. Brown*, 2020 IL 124100, ¶¶ 39, 59 (Karmeier, J., dissenting, joined by Theis, J.) (*Brown I*). I cannot think of a better description for the remand that the court issues today.

¶ 37    In a move that appears to be unprecedented in Illinois jurisprudence, this court, while expressing no opinion on the merits of the case, forces the trial court to take a particular position on the merits and denies that court its inherent power to reconsider its own ruling. The trial court reconsidered that ruling because it found that it was both legally erroneous and that it "force[d] the defendant to take a position not of her own choosing, one that she will lose on appeal and one which will unnecessarily delay (perhaps by years) the ultimate disposition of this case." In concluding that the trial court was not allowed to entertain defendant's motion to reconsider, the majority both mischaracterizes what happened below and misreads and misapplies this court's precedents. As I will demonstrate below, the trial court did absolutely nothing wrong, and there is nothing in this court's precedents supporting the majority's disposition. Indeed, our case law compels the opposite result. This court should consider the State's appeal on the merits.

¶ 38                    I. What Really Happened

¶ 39    The majority opinion is replete with statements that make it sound as if defendant and the trial court were thumbing their noses at this court's authority. For instance, the majority states that, "[o]n remand, however, the circuit court concluded it would not be in the 'best interests of justice' to follow this court's

- 10 -

directions and entered a different order." *Supra* ¶ 1. The majority later notes that this court directed the circuit court to enter an order dismissing defendant's information on the alternative nonconstitutional ground but that the circuit court concluded that "it would not be in the 'best interests of justice' to enter such an order." *Supra* ¶ 22. The majority also states that the circuit court concluded that the dissent in *Brown I* was correct and that the best interests of justice required it to disobey this court's directions. *Supra* ¶ 28. The majority further asserts that reaching the merits of the case would require it to hold that "a circuit court possesses the power to set aside the directions of this court." *Supra* ¶ 30. The majority characterizes defendant's motion to reconsider in a similar vein. For instance, the majority states that defendant argued that this court's decision in *Brown I* was incorrect and should not be followed and also that defendant launched an " 'impermissible attack on the judgment rendered by this court' " in *Brown I*. *Supra* ¶ 26 (quoting *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 52). Finally, the majority claims that defendant moved in the circuit court to overrule the supreme court. *Supra* ¶ 27.

¶ 40        Not one of the above characterizations of the defendant's motion to reconsider or the trial court's ruling is accurate. This court's holding in *Brown I* was that the trial court had set forth both a constitutional and a statutory basis for dismissing the charge against defendant and that therefore the constitutional basis should be stricken from the court's order. Applying the rule of constitutional avoidance, the majority held that "[t]he circuit court's holding that section 2(a)(1) of the FOID Card Act is unconstitutional was not necessary for the resolution of this case. Thus, in accordance with *Trent v. Winningham*, 172 Ill. 2d 420 (1996), and *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443 (1999), the circuit court's constitutional holding cannot 'properly serve as a basis for direct supreme court review.' " *Brown I*, 2020 IL 124100, ¶ 32 (quoting *Hearne*, 185 Ill. 2d at 455). The court thus directed the circuit court to enter a modified judgment order that excluded the finding of unconstitutionality. *Id.* The court was quite clear, however, that it was expressing "*no opinion on the merits of the circuit court's statutory analysis*." (Emphasis added.) *Id.* In other words, the *only* proposition the majority opinion in *Brown I* stands for is that direct supreme court review may not be had from a circuit court order that holds a statute unconstitutional while also providing a nonconstitutional basis for its ruling. This court expressed *no opinion* on the merits of the trial court's statutory analysis.

¶ 41 Defendant's motion to reconsider was directed solely at the *merits* of the trial court's statutory analysis, a matter that *Brown I* expressly declined to address. Defendant did not (1) argue that this court's decision in *Brown I* was incorrect and should not be followed (*supra* ¶ 26), (2) launch an impermissible attack on this court's decision in *Brown I* (*supra* ¶ 27), or (3) move in the circuit court to overrule this court (*supra* ¶ 27). The only way defendant could have done any of these things would have been if she had argued against this court's holding that a circuit court order that holds a statute unconstitutional while also providing a nonconstitutional basis for its ruling cannot properly serve as a basis for direct supreme court review. That was the *only* thing this court held in *Brown I*, and defendant never contested that proposition.

¶ 42 Similarly, the circuit court never concluded that it would be in the best interests of justice to refuse to follow this court's mandate and to enter a different order instead. Rather, the court did exactly what this court ordered it to do and entered an order dismissing the charge against defendant solely on statutory grounds. Defendant then filed a motion to reconsider, arguing that the statutory analysis was legally erroneous. The circuit court agreed with defendant that the statutory analysis was legally erroneous. The circuit court never, at any point, disagreed with the *Brown I* majority that the constitutional basis should be stricken if there was a valid nonconstitutional basis for its finding. What the circuit court decided was that the nonconstitutional basis was legally erroneous, a matter not addressed in *Brown I*. Thus, the circuit court's decision was in no way inconsistent with this court's mandate. The circuit court did not "disobey" this court's directions (*supra* ¶ 28) or "set aside the directions of this court" (*supra* ¶ 30). And, while the circuit court did cite Justice Karmeier's dissent, it did so for the proposition that the alleged statutory basis for the trial court's decision was meritless and doomed to fail on appeal. Unlike Justice Karmeier, the *Brown I* majority did not weigh in on the merits of the statutory analysis.[1] As the *Brown I* majority did not address the merits, there was no reason why the trial court could not exercise its inherent power to reconsider its own ruling. See, *e.g.*, *People v. Mink*, 141 Ill. 2d 163, 171 (1990) (trial court in criminal case has inherent authority to reconsider and correct its own rulings, and

---

[1]As the majority freely admits (*supra* ¶ 28), defendant and the trial court were entitled to criticize every aspect of *Brown I* and to say that the dissent was right about everything as long as the trial court complied with the mandate. Here, the trial court did so when it entered the precise order that this court directed it to.

this power extends to interlocutory rulings as well as final judgments).[2] The trial court could not have been more clear that its ruling was that the statutory analysis was legally erroneous, and the majority does not even attempt to explain how that could possibly be inconsistent with *Brown I*, which expressly declined to address that issue. The majority claims that the circuit court fundamentally misunderstood this court's mandate (*supra* ¶ 24), but it appears that the only misunderstanding is on the majority's part.

¶ 43                    II. No Authority Supports the Majority's Decision

¶ 44        The proposition the majority relies upon is that, when a cause is " 'remanded by the reviewing court with instructions to the circuit court to enter a specific order, the reviewing court's judgment is, *with respect to the merits*, "the end of the case," and there is "nothing which the circuit court [is] authorized to do but enter the decree." ' " (Emphasis added.) *Supra* ¶ 20 (quoting *Price*, 2015 IL 117687, ¶ 49, quoting *Smith v. Dugger*, 318 Ill. 215, 217 (1925)). The majority then proceeds to act is if the phrase "with respect to the merits" is not in the above quote, when that phrase makes all the difference. As both defendant and the State point out in their supplemental briefs, the rule the majority is relying upon applies when the reviewing court has finally determined an issue. The majority tellingly fails to discuss anything about the cases it cites and simply takes isolated phrases out of context. All one has to do is to read the cases cited in the majority opinion to see why the majority is incorrect.

¶ 45        In *Price*, this court had, in a previous appeal, determined that the plaintiffs' claim was barred under section 10b(1) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10b(1) (West 1998)). See *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 266 (2005). The court reversed the circuit court's decision and remanded with directions to dismiss pursuant to that section. *Id.* at 274. In accordance with this court's mandate, the circuit court dismissed plaintiff's complaint with prejudice. *Price*, 2015 IL 117687, ¶ 12. The plaintiffs later filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-

---

[2]The rule is no different where, as here, a different judge hears the motion to reconsider. See *McClain v. Illinois Central Gulf R.R. Co.*, 121 Ill. 2d 278, 287 (trial court is not bound by an order of previous judge and has the power to correct orders it considers to be erroneous).

1401 (West 2012)) directed at the circuit court's dismissal order, arguing that they had a meritorious claim based on newly available evidence that contradicted this court's conclusion on the section 10b(1) issue. *Price*, 2015 IL 117687, ¶ 13. This court held that this was an impermissible attack on this court's judgment. The full paragraph, from which the majority lifted a single sentence, is as follows:

> "Plaintiffs' argument rests on a misapprehension of the nature of the dismissal order. 'When a judgment is reversed by a court of review, the judgment of that court is *final upon all questions decided ***.*' *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 305 (1981). If the cause is then remanded by the reviewing court with instructions to the circuit court to enter a specific order, the reviewing court's judgment is, with respect to the merits, 'the end of the case,' and there is 'nothing which the circuit court [is] authorized to do but enter the decree.' *Smith v. Dugger*, 318 Ill. 215, 217 (1925). Because the circuit court has no discretion on remand to take any further action on the merits, but must do only as directed, the order entered in the circuit court is necessarily a 'ministerial act.' *Gospel Army v. City of Los Angeles*, 331 U.S. 543, 546 (1947); *Ute Indian Tribe*, 114 F.3d at 1521 (noting that once an appellate court resolves an issue and remands the cause to enter judgment, the trial court can only follow the ' "ministerial dictates of the mandate" ') (quoting *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 962 F.2d 1528, 1534 (10th Cir. 1992)). This principle—that a circuit court order which is entered at the specific direction of a reviewing court is a ministerial act—has long been recognized by this court. As we stated in *Dugger*:

>> 'A decree entered by a trial court in accordance with the mandate of this court must be regarded as free from error. *It is, in fact, the judgment of this court promulgated through the trial court* and is final and conclusive upon all the parties.' (Emphasis added.) *Dugger*, 318 Ill. at 217 (citing *People ex rel. McKee v. Gilmer*, 10 Ill. 242, 247-48 (1848))." (Emphases added and in original.) *Price*, 2015 IL 117687, ¶ 49.

*Price* went on to explain that a merits-based challenge directed at the dismissal order is improper *when the merits of the case have been decided by a reviewing court* because that would amount to a challenge to the reviewing court's judgment. *Id.* ¶ 51.

¶ 46    Similarly, in *Smith*, this court had reversed and remanded *on the merits* in a previous appeal. *Smith*, 318 Ill. at 216. The trial court, instead of following this court's mandate, permitted a supplemental answer to be filed, and then the complainants filed a replication. *Id.* This court reversed and remanded, explaining that "[w]here a decree is reversed and the cause is remanded with specific directions as to the action to be taken by the trial court it is the duty of that court to follow those directions, and a decree entered in accordance with such directions cannot be erroneous." *Id.* The court then elaborated that a decree entered in accordance with this court's mandate must be regarded as free from error because it is "the judgment of this court promulgated through the trial court and is *final and conclusive upon all the parties*." (Emphasis added.) *Id.* at 217. This court then set forth why the trial court's action was improper:

> "In this case *the judgment of this court was on the merits*, finding the vendors' title to be good and free from doubt and directing the entry of a decree granting the relief prayed for. *This was the end of that case*. There was nothing which the circuit court was authorized to do but enter the decree. It could not grant leave to answer, *for after final decree there was nothing to answer*. The answer which the court permitted to be filed alleged the existence of various judgments against one of the vendors which were liens on the land prior to the first decree, a bill to foreclose a mortgage filed in the circuit court prior to the first decree, and a bill for partition among the vendors filed after the first decree, during the pendency of the appeal to the Supreme Court. None of these matters was called to the attention of the circuit court or this court. *It was too late for the defendant to avail himself of them after a final judgment in this court*." (Emphases added.) *Id.*

The other cases cited by the majority are also ones in which a reviewing court had reversed and remanded *on the merits* in a previous appeal. See *Boggs v. Willard*, 70 Ill. 315, 317 (1873) (explaining that, after this court had reversed and remanded on the merits, circuit court could only act in conformity with the opinion because "all the questions had been finally heard, tried and decided on the appeal in this court"); *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 305 (1981) (previous judgment was final on the dissolution of the receivership; when a judgment is reversed by a court of review, the judgment is final upon all questions decided); *Fisher v. Burks*, 285 Ill. 290, 294 (1918) ("[t]he former opinion of this

- 15 -

court is on the merits, according to the showing made by the mandate of this court";
lower court could not then retry the case).

¶ 47    A fuller explanation of the rule referenced by the majority may be found in *Noble v. Tipton*, 222 Ill. 639 (1906). In that case, this court discussed at length the various cases that had held that a merits-based reversal precludes further action in the lower court that is inconsistent with the opinion of the reviewing court. *Id.* at 644-47. This court then distilled the rules it had discussed and explained how they applied to the case before it:

"In a case like this, where a cause is reversed by this court, and remanded to the trial court with directions to proceed in conformity with the views of this court, it is clearly the duty of the trial court to examine the opinion and be governed as to the decree it will enter by the views expressed in the opinion. *If the questions involved in the appeal have been considered and determined by this court upon the merits, in whole or in part, then it is the duty of the trial court to enter a judgment or decree as to those questions in accordance with the determination and decision of this court without a re-trial*, and it would be error under such circumstances to permit the pleadings to be amended and thereby so change the issues involved as to require a new trial upon the facts before a final decree was entered. *If, however, the questions involved, or any of them, are not decided upon their merits by this court, and the cause is reversed and remanded to the lower court with directions to proceed in conformity with the opinion of this court, then only the legal principles involved and which have been announced in its opinion by this court will control the lower court in its further consideration of the questions involved in the case which have not been determined on their merits in this court.* The opinion of this court filed upon the first appeal was upon the question of the delivery of said deed upon the merits. The mandate of this court required the circuit court to proceed in accordance with the views expressed in that opinion, and upon the question of the delivery and validity of said deed it was the duty of the trial court to enter a decree holding said deed to be null and void, and not to re-try that question or to permit the appellant to so amend his pleadings as to prevent a decree upon that question and to cause a re-trial of the case upon a question not involved in the case on the first appeal." (Emphases added.) *Id.* at 647-48.

See also, *e.g.*, *Roggenbuck v. Breuhaus*, 330 Ill. 294, 298-99 (1928) ("It is only when the merits of the controversy and the ultimate rights of the parties are decided in a court of review that a reversal and remandment will deprive the court below of the right to allow amendments to the pleadings and hear other evidence.").

¶ 48    In the previous appeal in this case, this court did *not* reverse and remand on the merits. This court vacated the trial court's order on procedural grounds, while specifically stating that we were expressing *no opinion* on the merits. *Brown I*, 2020 IL 124100, ¶ 32.[3] Further, our opinion specifically recognized that the trial court's order was subject to appellate review on the merits. *Id.* Thus, the cases the majority relies upon provide no support whatsoever for its holding. Because this court had not expressed any opinion on the merits and had specifically left the merits of the statutory analysis open for appellate review, there was nothing precluding the trial court from reconsidering its ruling on the merits. See, *e.g.*, *Price*, 2015 IL 117687, ¶ 49 (when this court reverses and remands, its opinion is final *on all questions decided*); *Noble*, 222 Ill. at 648 (when this court has not decided certain questions on the merits, only the legal principles that have been announced by the court will control the lower court in its further consideration of questions that have not been determined on the merits in this court); *Roggenbuck*, 330 Ill. at 298-99 (only a decision on the merits by a court of review deprives the lower court of the ability to take further action). The majority claims that this court's mandate was " 'precise and unambiguous.' " *Supra* ¶ 21 (quoting *Fisher*, 285 Ill. at 293). But neither the mandate nor the opinion said anything precluding the trial court from considering a motion to reconsider on the merits.[4] And indeed, why would this court's mandate have said any such thing, as the opinion specifically recognized that the merits were still open to review?

---

[3]Perhaps realizing that it is relying on wholly inapplicable authority, the majority adds the words "or vacated" to the *Price* rule. See *supra* ¶ 24. As we shall see, however, extending the rule for merits-based decisions of this court to a situation in which there was no judgment on the merits from this court is attempting to pound a square peg into a round hole.

[4]The opinion filed today states in its conclusion that, "[o]n remand, the circuit court shall not entertain any motion from any party, nor take any action other than entering the modified order." *Supra* ¶ 33. The inclusion of this language merely highlights and confirms the absence of any such language in the previous opinion.

¶ 49    The majority tries to get around this problem by relying on the principle from *Price* that, when a judgment is reversed and remanded by this court with directions to enter a particular order, that order becomes the judgment of this court promulgated through the trial court. *Supra* ¶ 24. Thus, according to the majority, the trial court's order is final and conclusive on the parties and must be regarded as free from error. *Supra* ¶ 24. Moreover, the circuit court has no power to set aside a judgment of this court, and a party may obtain relief from a judgment only from the court whose judgment it is. *Supra* ¶ 25. There are two problems with the majority's position. First, as thoroughly set forth above, the rule that the majority is referring to applies when the reviewing court has reversed and remanded and directed the entry of a final judgment. The majority should have recognized this problem when it wrote that, when the circuit court performs the act of implementing this court's judgment, that order is " ' "final and conclusive upon all the parties." ' " *Supra* ¶ 24 (quoting *Price*, 2015 IL 117687, ¶ 49, quoting *Smith*, 318 Ill. at 217). The order this court directed the court to enter in *Brown I* was anything but a judgment of this court that was final and conclusive on the parties, as this court stated expressly that the order was subject to further review. See *Brown I*, 2020 IL 124100, ¶ 32.

¶ 50    This brings us to the second problem: the majority has painted itself into a corner from which there is no escape. According to the majority, the order entered pursuant to this court's directions was not in fact an order of the circuit court but was in fact a judgment of this court. *Supra* ¶ 24. Because it is this court's order, it must be regarded as " ' "free from error," ' " and it is " ' "final and conclusive on all the parties." ' " *Supra* ¶ 24 (quoting *Price*, 2015 IL 117687, ¶ 49, quoting *Smith*, 318 Ill. at 217). And relief may be had from this order only from the court whose judgment it is, *i.e.*, this court. *Supra* ¶ 25. However, the majority also freely concedes that the very same order may be reviewed by *the appellate court*. *Supra* ¶ 10. In other words, the appellate court is free to reverse the trial court's order on the exact same grounds that the trial court reconsidered it. Here is the question the majority must answer: if the order entered at this court's direction was a "free from error" order of the supreme court that was final and conclusive on all the parties, how is it subject to reversal by the appellate court? In the *same opinion*, the majority says that relief from the order entered by the trial court may be had only from *this court* because it is in reality this court's judgment (*supra* ¶ 25) and also that relief from this order may be obtained from the *appellate court* (*supra* ¶ 10). The majority cannot have it both ways, and it created this problem by trying to apply a rule

- 18 -

applicable to reversals by this court on the merits to a situation where this court did not issue a decision on the merits.

¶ 51    In a nutshell, the conundrum for the majority is this: either (1) the order entered by the trial court was in reality the judgment of this court, in which case it could *not* be reviewed by the appellate court, or (2) the order *could* be reviewed by the appellate court, in which case it could *not* be the judgment of this court. And if it is the latter, then there is no reason why the trial court could not exercise its inherent power to reconsider its own ruling. If the order is subject to review on the merits by the appellate court, then it is subject to reconsideration on the merits by the trial court. The majority never explains why it is perfectly fine with the appellate court reversing the order but considers it an affront to this court's authority for the circuit court to reconsider it. Nor does the majority explain why, if this court has not considered the merits of the statutory issue, it is forcing the trial court to maintain a certain position on that issue. Ironically, the majority claims that it is forced to decide the case as it does to avoid "upending our hierarchical judicial system." *Supra* ¶ 26. But the only thing upending our hierarchical judicial system is the majority opinion, which says that the appellate court may review a judgment of this court that was final and conclusive upon all the parties. In reality, the judgment of the circuit court was *not* a judgment of this court that was final and conclusive on all the parties because this court declined to reach the merits of the statutory analysis and only vacated the circuit court's judgment on procedural grounds. Accordingly, the trial court was free to reconsider the merits of that ruling, and nothing about it doing so upends our hierarchical judicial system.

¶ 52    The majority asserts that defendant should have filed a petition for rehearing in *Brown I* rather than a motion to reconsider in the circuit court. *Supra* ¶ 27. But why would defendant have done so if she did not disagree with the holding in *Brown I*? Defendant's argument in the motion to reconsider was not that direct supreme court review may be had from a trial court order that rests on both constitutional and nonconstitutional grounds. Her argument was that the trial court's statutory analysis was incorrect on the merits. Is the majority really claiming that defendant could have brought her merits-based challenge to the trial court's statutory analysis in a petition for rehearing to this court? On what possible basis could defendant have done so, when this court had expressly declined to address that issue? And how could this court possibly have granted relief on that basis? The grounds for

rehearing are that there are points that the court "overlooked or misapprehended." Ill. S. Ct. R. 367(b) (eff. Nov. 1, 2017). *Brown I* did not overlook or misapprehend the merits of the trial court's statutory analysis; it expressly declined to reach them because it vacated on procedural grounds. The majority must answer these questions if it is going to persist in its point that defendant should have raised her argument in a petition for rehearing to this court.

¶ 53                    III. Defendant Could File a Motion to Reconsider

¶ 54        Because the majority incorrectly answers the first question upon which we ordered supplemental briefing, it does not reach the second question. The second question was "whether the circuit court could entertain defendant's motion to vacate the June 4, 2020, modified order, given that 'as a general rule, a party cannot complain of error which does not prejudicially affect it (*Powell v. Dean Foods Company*, 2012 IL 111714, ¶ 36).' " This was somewhat of a loaded question, as whether or not the trial court's order prejudiced defendant is the key inquiry. Under the circumstances of this case, I believe that defendant was entitled to file a motion to reconsider. The majority twice refers to the trial court's order having granted defendant "complete relief." *Supra* ¶¶ 14, 30. Defendant, however, was not acquitted. She obtained a dismissal on what she considered dubious legal grounds that she had never argued, and the order was still subject to review by the appellate court.

¶ 55        There is no exception in the statute for possession of a firearm in the home, and defendant never argued to the contrary. Neither the State nor defendant believes that defendant has a valid argument in support of the statutory ground asserted by the trial court. Defendant contends that the effect of the court's dismissal on this unargued basis is to keep her in legal limbo for years while the issue is appealed, and then she will ultimately end up right back in the same place, filing a motion to declare the statute unconstitutional as applied. Thus, from defendant's point of view, she has obtained anything but "complete relief." Defendant has an interest in the finality of the proceedings (see *People v. Levin*, 157 Ill. 2d 138, 161 (1993)), and that interest would be prejudiced by forcing her to defend a position on appeal that she never asserted and that she does not agree with, leaving her in legal limbo

and significantly delaying the resolution of the proceedings.

¶ 56                                    IV. Conclusion

¶ 57        For all of the above reasons, I agree with the parties that defendant was entitled to file a motion to reconsider and that the trial court did not exceed the scope of this court's mandate in *Brown I* when it reconsidered its previous ruling on the merits. Because this court did not reach the merits in *Brown I*, the trial court clearly did not exceed the scope of our mandate when it reconsidered that order on the merits. The majority's opinion to the contrary is based on a misunderstanding of the record and a misreading of this court's precedents. I thus cannot join its opinion. I would reach the merits of the State's appeal, and the majority clearly errs in failing to do so.

¶ 58        JUSTICES GARMAN and OVERSTREET join in this dissent.